THE STATE OF MONTANA, Plaintiff and Respondent, v.
TIMOTHY E. DESS, Defendant and Appellant.

No. 11629.
Submitted Oct. 29, 1969.
Decided Dec. 1, 1969.
462 P.2d 186.

Jardine, Stephenson, Blewett & Weaver, Great Falls, George McCabe, Great Falls, argued, for appellant.

Robert L. Woodahl, Atty. Gen., Michael T. Greely, argued, J. C. Weingartner, Ast. Atty. Gen., argued, Helena, Gene B. Daly, County Atty., Patrick McKittrick and E. F. Gianotti, Deputy County Attys., Great Falls, for respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

Timothy E. Dess, appellant herein, was charged and convicted of burglary in the first degree by a jury. Trial was had in the district court. From the jury verdict and judicial sentence of ten years, the appellant seeks review of the following

issues: (1) Whether the court erred in denying the motion to suppress the evidence; (2) Whether the court erred in submitting the case to the jury and in denying appellant's motion for a directed verdict of acquittal; (3) Whether the court erred in admitting the testimony of Mike Trine; (4) Whether the court erred in admitting State's exhibits Nos. 1, 2, 3, 6, 7, 8, and 9; and (5) Whether the court erred in submitting certain instructions to the jury.

The Rainbow Grocery in Great Falls, Montana was broken into sometime after 9:30 p. m. on May 15, 1968. The owner of the store, Albert Rusch, testified that cigarettes, money, bologna, TV dinners, eggs and chickens were stolen. Four people were charged with the burglary—appellant, Michael Szetala, William Sommers, and Mike Trine. Mike Trine was a 16 year old lad. He voluntarily came to the police and gave details of the burglary, its participants, and a drinking party. Appellant was arrested on a charge of contributing to the delinquency of a minor. Trine told the police where he had buried his share of the money taken in the burglary. It was dug up by the police. Trine was handled as a juvenile. He was 17 years of age at the time of trial.

William Sommers plead guilty to the crime of burglary and received a 5 year sentence. William Sommers lived at 4500—7th Avenue North. The disposition of the case against Michael Szetala is not shown in the record.

Following the arrest of Tim Dess, appellant here, on the charge of contributing to the delinquency of a minor on May 17, 1968, police officers went to the home of appellant's mother located at 4500—7th Avenue North, to see if they could search the premises. Appellant's mother was not at home and a Mr. Kinder allowed the officers to search the refrigerator only. The officers discovered chicken parts in the refrigerator and also observed several TV dinners on the kitchen table. As to the premises at 4500—7th Avenue North, the officers apparently believed at

that time that it was the residence of Tim Dess. Tim Dess had supplied the officers with that information. Subsequently it developed that Tim Dess had not resided in his mother's home since 1959; he actually lived with a married sister at 910—6th Street South. Mr. Kinder was a resident of some sort at 4500—7th Avenue North. This address is somewhat off by itself and had outbuildings, a wood pile, an old well, and a garbage area.

One of the officers, Glenn W. Chapman, remained to watch the premises from a distance and testified he saw Mr. Kinder running from the house on two occasions carrying something. He radioed headquarters for a search warrant and was notified that Dess, who was being held at the jail, had phoned Kinder and told him it was all right to let the police search the premises. The officers upon searching the house and surrounding area found money, cigarettes, bologna, eggs, lunchmeat, TV dinners and frozen chickens. The various items found were concealed in highly unusual places. For example, money in the form of coins was in old socks in a bucket hung down an old well; a large bologna sausage hidden behind some trash in a shed; a box of food hidden among the garbage. All of these areas were in the vicinity where the surveillant officer observed Kinder running with packages. Kinder was arrested on the premises for receiving stolen property.

Mike Trine testified that he was involved in the burglary with the appellant. Trine stated he and the other three, including appellant, left a beer drinking party that evening about 11:00 p.m. They visited several bars before driving to the Rainbow Grocery in a car which fitted the description of appellant's car. He saw Dess and the others enter the store and return carrying things in their arms, while he acted as a lookout. He testified that articles were taken to a house on 7th Avenue North past 42nd Street, that he helped carry things into the house, and later they all returned to the grocery a second time.

The owner of the store testified that late in the afternoon of May 15, appellant came into his store and wanted some gro-

ceries. He did not have money. He even wanted to sell the owner his car but the offer was declined. The owner finally allowed appellant to have about $1.50 worth of lunch meat on credit.

The appellant testified he had attended the party but went to his mother's home that night while the other three boys took his car. He stated he got up and went to work at 4:30 a.m. the following morning, and told Sommers, who was living at his mother's, to get rid of the groceries. He also stated he had not heard them unloading the groceries sometime earlier. In addition, Dess testified he did not give the officers consent to search his mother's residence.

Appellant's first contention is that the search and seizure of the property found at the Dess home was unlawful since Mrs. Dess did not consent to any search nor was a search warrant issued. Thus he maintains that his motion to suppress the evidence from being admitted at the trial should have been granted.

The exclusionary rule fashioned in Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), and Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) excludes from a criminal trial any evidence seized from the defendant in violation of his 4th Amendment rights. In Mapp and Weeks the defendant against whom the evidence was held to be inadmissible was the victim of the search. In the recent case of Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969) the Supreme Court rejected any expansion of the 4th Amendment and the exclusionary rule to include those who are aggrieved solely by the introduction of damaging evidence, or those whose rights were not violated by the search itself. The Court also cited the rule laid down in Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697, 702, 78 A.L.R.2d 233 (1960) which states:

"In order to qualify as a 'person aggrieved by an unlawful search and seizure' one must have been a victim of a search or

seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else * * *. Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy.''

In the instant case, appellant was not the victim of any search—his privacy was not invaded. In Jones, supra, it was said, ''anyone legitimately on premises where a search occurs may challenge its legality by way of a motion to suppress, when its fruits are proposed to be used against him.'' The appellant does not fit any class that is protected by the exclusionary rule. He was a guest in his mother's home one night, but after a guest has left the home of another he will not be able to obtain standing by claiming that the search invaded his privacy. United States ex rel. Puntari v. Maroney, 220 F.Supp. 801 (D.C.Pa. 1963).

Further, both the *Jones and Alderman* decisions reject the contention that evidence seized in violation of one person's 4th Amendment rights can never be admitted against another person. Section 95-717, R.C.M.1947 states that no search and seizure is illegal as to the defendant if: (a) the defendant has disclaimed any right to, or interest in the place searched or articles seized; (b) no right of the defendant has been infringed upon by the search; or (c) irregularities in the proceedings have not affected his substantial rights. The record discloses the appellant disclaimed any interest in the property recovered from the search and had no possessory interest in his mother's home.

The court did not err in admitting into evidence the property obtained in the search, even assuming the search was illegal. Whether the state proved that appellant voluntarily consented

to the search or not, is not relevant under the circumstances in this particular case.

At the close of the prosecution's case, appellant's motion for a directed verdict of acquittal was denied. The appellant relies on section 94-7220, R.C.M.1947 to support his contention that the court abused its discretion by submitting the case to the jury since Trine's testimony was not sufficiently corroborated.

 It is well established in Montana that the sufficiency of the corroboration necessary to sustain a conviction based on the testimony of an accomplice is a matter of law. State v. Moran, 142 Mont. 423, 384 P.2d 777 (1963) ; State v. Barick, 143 Mont. 273, 389 P.2d 170 (1964) ; State v. Harmon, 135 Mont. 227, 340 P.2d 128 (1959). Thus, if the trial judge is satisfied that the evidence is corroborative, he must submit the case to the jury to determine what effect the corroboration has and whether it is sufficient to warrant a conviction. The weight given to the accomplice's testimony is for the jury to decide and in the instant case the jury was properly instructed as to Trine's testimony.

 There is enough corroborating evidence in the record to indicate that the court properly submitted the question of the appellant's guilt to the jury—the appellant admitted owning the car involved in the burglary; attending the same party with the other principals in the burglary; being in the Rainbow Grocery earlier on the day of the burglary; and being in the house where the stolen property was discovered and knowing it was there. Appellant suggests that the evidence, independent of the testimony of an accomplice, must prove him guilty beyond a reasonable doubt. This is not the law in Montana, however. Though there must be some independent evidence connecting the defendant to the crime, it need not be sufficient alone to sustain a conviction. The jury can consider the testimony of the accomplice and give the testimony whatever weight they desire. In State v. Donges, 126 Mont. 341, 251 P.2d 254 (1952), the Court stated at page 347, 251 P.2d at page 257:

"The evidence which corroborated Bungard could be furnished by the defendants. It could be circumstantial. It need not extend to every fact to which Bungard testified and need not be sufficient to justify a conviction or establish a prima facie case of guilt; it being sufficient if it tends to connect defendants with the commission of the crime. Whether it tends to do so is a question of law, while its weight—its efficacy to fortify the testimony of Bungard and render his story trustworthy—is a matter for the consideration of the jury. State v. Cobb, 76 Mont. 89, 245 P. 265."

Appellant maintains that this Court should reverse the verdict of the district court because Mike Trine was allowed to testify and his name was not listed on the information. However, this Court cannot even consider this question since appellant made no objection to the witness's testimony at the trial. As this Court stated in State v. Doe, 146 Mont. 501, 505, 409 P.2d 439, 441 (1965) : "Defendant cannot now put the trial court in error by his attempt to raise this question for the first time in this court." and again in State v. Perkins, 153 Mont. 361, 457 P.2d 465 (1969) "Since no objection was made at the trial we are not in a position to review the alleged error."

Appellant contends the court erred in admitting State's exhibits Nos. 1, 2, 3, 6, 7, 8 and 9 on grounds that the foundation laid was not sufficient to identify them. This argument, however, does not go to the admissibility of the evidence but applies to the weight of the evidence. In State v. Wilroy, 150 Mont. 255, 259, 434 P.2d 138 (1967), the Court held that the lack of positive identification goes to the weight of the evidence rather than to its admissibility. Exhibits Nos. 1, 2, 3, 6, 7, 8 and 9 were all taken from the Dess home. Officers discovered them, took them into possession, tagged them, and preserved them in evidence. The owner of the store, Mr. Rusch, testified that like items were missing from his store and the frozen TV dinners, chickens, bologna, canned meat and eggs had been

returned to him by the officers under orders to preserve them for trial, which he did.

In his final argument appellant contends the court erred in submitting to the jury Instructions Nos. 6, 7 and 16. Court's instruction No. 6 read as follows:

"You are instructed that the elements of First Degree Burglary are an entry in the nighttime with the specific intent to commit grand or petit larceny or any other felony. The State of Montana need not prove that a larceny was actually committed by the defendant, nor need the State of Montana prove the manner in which the entrance was made, provided it is proved beyond a reasonable doubt that the defendant, in fact, entered the building in question, with the required intent to commit grand larceny."

Appellant maintains this instruction was erroneous because it does not specifically state that the entry was unlawful. From a reading of all the instructions together, and the fact the Information alleged that the entry was unlawful, the jury was properly instructed on this issue.

Instruction No. 7 stated:

"You are instructed that the word 'wilfully', when applied to the intent with which an act is done or committed and as used in these instructions, implies simply a purpose or willingness to commit the act or to make the omission in question. The word does not require in its meaning any intent to violate law, or to injure another, or to acquire any advantage."

Appellant argues this instruction leads to the conclusions that no specific intent to commit larceny need be proven. If this instruction is confusing, any prejudice that may have resulted was cured by instruction No. 6 where the jury was charged with finding the specific intent to commit a burglary.

Instruction No. 16 stated:

"You are instructed that the law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is

rarely possible. Only that degree of proof is necessary which convinces the mind and directs and satisfies the conscience of those who are bound to act conscientiously upon it.''

Appellant argues that this statement is in conflict with the law since it permits conviction upon a preponderance of the evidence. This instruction could not prejudice the defendant since instructions Nos. 1, 2, 3, 6 and 15 specifically told the jury that they had to find the defendant guilty beyond a reasonable doubt.

This court finds no prejudicial error in the record before us. Accordingly, the judgment of conviction is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, and JOHN CONWAY HARRISON, and the HONORABLE L. C. GULBRANDSON, District Judge, sitting in place of MR. JUSTICE BONNER concur.