IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

_____

STATE OF MONTANA,

        Plaintiff and Respondent,     No. 12479

-vs-

JOHN MICHAEL SPIELMANN,

        Defendant and Appellant.

------------------------------------------------

STATE OF MONTANA,

        Plaintiff and Respondent,     No. 12480

-vs-

LOUIS TONY CHRISTENSEN,

        Defendant and Appellant.

_____

Appeal from:  District Court of the Eighteenth Judicial District,
           Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellants:

        Smith, Smith and Sewell, Helena, Montana
        Robert J. Sewell argued, Helena, Montana
        Anderson and Dasinger, Bozeman, Montana

    For Respondents:

        Hon. Robert L. Woodahl, Attorney General, Helena,
        Montana
        J. C. Weingartner, Assistant Attorney General, argued,
        Helena, Montana
        Thomas A. Olson, County Attorney, Bozeman, Montana
        Donald E. White, Special Deputy County Attorney, argued,
        Bozeman, Montana

_____

                Submitted: October 2, 1973

                Decided: NOV 29 1973

NOV 29 1973

Filed:

_Thomas J. Kearney_
                       Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This appeal is brought by defendants John Michael Spielmann and Louis Tony Christensen, from their joint trial in the district court of Gallatin County. Spielmann was convicted of one count of robbery and Christensen of two counts of robbery and of first degree burglary.

On November 9, 1972, Spielmann, Christensen and Douglas Green, aged 15, were arrested together. Green plead guilty to charges against him and was committed to the Pine Hills Juvenile facility. Green testified as a prosecution witness at the trial of Spielmann and Christensen.

From the trial record these facts appear: Sometime between 10:00 p.m. the night of October 31, 1972, and 2:30 a.m. the morning of November 1, 1972, Christensen and Green burglarized the medical office of Dr. Edward L. King in Manhatten, Montana, taking various types of drugs, some syringes and other medical equipment.

On November 2, 1972, Christensen and Green, at gun point, robbed the Medical Arts Pharmacy in Bozeman, Montana, taking all the codeine, morphine and demerol. The pharmacist in charge, D. G. Dunham, was able to generally describe the two persons and their clothing. He stated that both had nylon stockings over their faces.

On November 8, 1972, Spielmann, Christensen and Green again burglarized Dr. King's office sometime between 5:45 p.m. and 8:00 p.m., this time taking a black medical bag and various drugs.

On November 9, 1972, at about 9:45 a.m., Spielmann and Green, at gun point, again robbed the Medical Arts Pharmacy wearing nylon stockings over their faces. Mr. Dunham was on duty and recognized Green from the previous robbery. Some redlin, dexedrine and demerol were taken in the robbery. While the robbery was in progress a customer, Mrs. Aileen Zacher, entered the pharmacy and

observed the two men who ran from the pharmacy to a waiting car driven by Christensen. At this time a Mrs. Anna Clousing, with her mother and son, were driving south on Willson Avenue and observed what they described as a black-over-white 1964 or 1965 Buick leaving the scene of the crime.

After police were notified of the robbery, roadblocks were set up around Bozeman. Instructions were given to look for a Buick with a black top and white body, about a 1964 or 1965 model, and two occupants, one of whom wore a pencil-line mustache, appeared to be in his forties and wore a khaki coat. The other occupant was described as a younger, taller man with rather long hair, wearing a khaki colored coat with a fur collar.

Two Montana highway patrolmen, John Flynn and Kerry Keyser, participated in the search setting a roadblock on U.S. Highway 191 at its intersection with Cottonwood Road. At approximately 11:00 a.m. they were notified to discontinue the roadblock. While proceeding back toward Bozeman on U.S. 191, they noticed a black-over-white 1967 Buick traveling the opposite direction. The patrolmen turned and came up behind the Buick, which stopped before the patrol car lights or siren were turned on. The driver of the Buick, Christensen, who was in his forties and had a black pencil-line mustache, got out as the two patrolmen were walking up on either side. Both patrolmen looked into the Buick and observed Green sitting in the front seat on the passenger side and Spielmann sitting in the back seat. They also observed a khaki jacket with a fur collar on the left side of the rear seat. Patrolman Keyser asked Christensen to come back to the patrol car with him. Flynn remained at the other car talking to the other two men.

Patrolman Keyser contacted Bozeman law enforcement officers concerning the stopped vehicle and remained seated in the patrol car with Christensen, questioning Christensen about the absence of license plates on his car. Christensen was also asked if there was a gun in the Buick and he replied there was a gun on the front seat under some books. Patrolman Flynn walked back to the patrol car from the Buick and asked Christensen if he could

- 3 -

look into the trunk. Christensen said yes, and yelled to Green to push the button that opened the trunk. Green pushed the release button opening the trunk and in it Flynn saw another khaki type jacket. It appears Flynn closed the trunk once, and then again asked Christensen if he could look in the trunk. Green again opened the trunk at Christensen's request, and this time Flynn took a black medical bag from the trunk.

Officers from the Bozeman city police and from the Gallatin County sheriff's office arrived on the scene in response to the radio notification from Keyser. Spielmann, Christensen and Green were placed under arrest and advised of their rights.

On November 10, 1972, Mr. Harold Cain telephoned the Gallatin County sheriff's office and informed them that a bag containing drugs had been found at his wrecking yard the previous day by a customer, Mr. David Keith. Gerald Mell, a pharmicist who had been employed at the Medical Arts Pharmacy, testified at trial concerning these drugs and identified them as having come from the Medical Arts Pharmacy based upon inventory markings on the containers and the fact the types of drugs corresponded with the types missing after the robbery. Green testified that Spielmann, at Christensen's request, had tossed the bag of drugs out of the car window before the three were apprehended.

Spielmann and Christensen retained separate counsel. Both filed identical pretrial motions to suppress the evidence seized in the November 9 searches of the Buick automobile, and a joint hearing was had. Defendants were tried together without objection by defendants or their respective counsel.

On appeal defendants bring three issues of error:

(1) Whether the district court erred in denying defendants' motions to suppress evidence obtained in the November 9 searches of the Buick automobile?

(2) Whether prejudicial error resulted from the consolidation of the cases for trial?

(3)  Whether the district court erred in denying motions to dismiss on the basis of insufficient independent evidence to corroborate the testimony of the accomplice?

Issue 1.  Certain facts appear undisputed.  The November 9 searches of the automobile by the patrolmen were not pursuant to a warrant/or incident to arrest and exceeded the scope of the "plain view doctrine" as to most of the evidence seized.  The consent to search was given prior to the defendants being placed under arrest and informed of their rights.

However, the fact that search was conducted on an automobile traveling on a public highway, pursuant to descriptive information known to the law enforcement officers conducting the search, brings into issue the "probable cause exception" developed in Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L ed 543; Dyke v. Taylor Implement Mfg. Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L ed 2d 538; Chambers v. Maroney, 399 U.S. 42, 48, 90 S.Ct. 1975, 26 L ed 2d 419, 426, 428; Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L ed 2d 564; and various other United States Supreme Court cases which differentiate between automobiles and nonmovable premises.  The rationale upon which this differentiation is predicated is stated in Chambers:

> "In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office.  In Carroll v. United States, 267 US 132, 69 L Ed 543, 45 S Ct 280, 39 ALR 790 (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway.  After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances that would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize.  The Court expressed its holding as follows:
>
> "'We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the Fourth Amendment has been construed, practi- cally since the beginning of the Government, as recognizing a necessary difference between a search of a store, dwelling house or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat,

- 5 -

wagon or automobile, for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

"'Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. * * * [T]hose lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise. * * *

"'The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported.' * * *

"The Court also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

"'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.'

" * * *

"Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

The determination made by the trial court before entering its order denying defendants' motions to suppress and the determination this Court must make is: Did the patrolmen conducting the search of the automobile have probable cause to believe it was carrying contraband or stolen property from the robbery of the Medical Arts Pharmacy a short time prior to the search?

A general definition of probable cause is stated in United States v. Thompson, 420 F.2d 536, 539 (3rd Cir.):

"One need not have evidence which would justify a conviction; probable cause exists if the facts and circumstances known to the officer would warrant a prudent man in believing that the offense has been or is being committed. On the other hand, probable cause means more than a bare suspicion, the line between mere suspicion and probable cause 'must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances.'"

The basis of the probable cause existing in Chambers was a description of a car and occupants furnished by the victim of a service station robbery and two teenage observers. Officers were seeking a blue compact station wagon carrying four men, one of whom was wearing a green sweater and one of whom was wearing a trench coat. In the instant case, officers had information which was as particular and reliable; which matched the defendants, their clothing, and their automobile as closely as that in Chambers.

Accordingly, the trial court was correct in denying defendants' motions to suppress evidence obtained in the initial searches.

Issue 2. Whether prejudicial error resulted from consolidation of the cases for trial? Both Spielmann and Christensen retained and were represented by separate paid counsel. Neither defendants nor their respective counsel objected to consolidation prior to or during trial. Neither of defendants' trial counsel participated in this appeal.

The case precedent cited by defendants in support of this issue involves instances of failure of the trial court to appoint separate counsel or denial of a request to allow separate trials. In light of the undisputed facts that both Spielmann and Christensen were represented at trial by competent counsel of their own choice and that at no time prior to appeal was this objection raised, we find the trial court did not err in conducting a joint trial.

It often happens that a joint trial with two participating attorneys can be an advantageous tactic or strategy. Hindsight has great advantage over foresight, in that it is always 20-20.

After electing a particular course of strategy, a defendant cannot assign as error on appeal the fact that his defense was unsuccessful, predicated on the supposition that another alternative would have been successful. State v. Meidinger, ____Mont. ____, 502 P.2d 58, 29 St.Rep. 861; Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L ed 2d 408.

Issue 3. Whether the district court erred in denying motions to dismiss on the basis of insufficient independent evidence to corroborate the testimony of the accomplice? This issue is predicated on section 94-7220, R.C.M. 1947, which provides:

"A conviction cannot be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration is not sufficient, if it merely shows the commission of the offense, or the circumstances thereof."

Whether there is sufficient independent corroboration of an accomplice's testimony tending to connect a defendant with the commission of the offense charged is a determination of law which must be made by the trial court. State v. Moran, 142 Mont. 423, 384 P.2d 777; State v. Dess, 154 Mont. 231, 237, 462 P.2d 186.

Here, we find sufficient corroborating evidence in the record from state's witnesses to warrant submission of this case to the jury: Mr. D.G. Dunham; Mrs. Anna Clousing and her son David; Mrs. Aileen Zacher, who saw the defendants and their car during the commission of a robbery; Dr. Edward King; Mr. Gerald Mell; Mr. Harold Cain; Patrolmen Flynn and Kyser; and Mr. David Keith.

The requirement and application of section 94-7220, R.C.M. 1947, was explained in Dess:

"* * * Appellant suggests that the evidence, independent of the testimony of an accomplice, must prove him guilty beyond a reasonable doubt. This is not the law in Montana, however. Though there must be some independent evidence connecting the defendant to the crime, it need not be sufficient alone to sustain a conviction. The jury can consider the testimony of the accomplice and give the testimony whatever weight they desire. In State v. Donges, 126 Mont. 341, 251 P.2d 254 (1952), the Court stated at page 347, 251 P.2d at page 257:

"'The evidence which corroborated Bungard could be furnished by the defendants. It could be circumstantial. It need not extend to every fact to which Bungard testified and need not be sufficient to justify a conviction or establish a prima facie case of guilt; it being sufficient if it tends to connect defendants with the commission of the crime. Whether it tends to do so is a question of law, while its weight--its efficacy to fortify the testimony of Bungard and render his story trustworthy--is a matter for the consideration of the jury. State v. Cobb, 76 Mont. 89, 245 P. 265.'"

From our examination of the record, we find no prejudicial error. The jury was properly instructed; there was amply substantial credible evidence properly before it upon which to base its verdict of guilty.

The judgment of conviction is affirmed.

_____
                    Justice

We Concur:

_____
          Chief Justice

_____

_____
          Justices

_____
Hon. Edward T. Dussault, District
Judge, sitting for Justice John
Conway Harrison.

- 9 -