STATE OF MONTANA, Plaintiff and Respondent, v. DONALD B. CRIPPS, CHRIS LEE WILSON and ROBIN A. SCHREINER, Defendants and Appellants.

No. 14007.
Submitted April 24, 1978.
Decided July 12, 1978.
Rehearing Denied Aug. 3, 1978.
582 P.2d 312.

John M. McCarvel, argued, Great Falls, for defendants and appellants.

Mike Greely, Atty. Gen., Helena, Brenda Gilmer, argued, Asst. Atty. Gen., Helena, Robert Deschamps, III, County Atty., Missoula, for plaintiff and respondent.

MR. CHIEF JUSTICE HASWELL delivered the opinion of the Court.

The defendants Wilson, Cripps and Schreiner have appealed from their convictions of committing the offenses of possession of dangerous drugs and defendant Wilson has appealed from his additional conviction of committing the offense of conspiracy to sell dangerous drugs.

■ Subsequent to oral argument on this case but prior to our decision defendant Chris Lee Wilson died. The State then moved to dismiss the appeal as to those issues which relate solely to Wilson

on the basis that they are now moot. We grant the State's motion. *State v. Clark-Kotarski* (1971), 156 Mont. 527, 486 P.2d 876.

In early February 1977, James Weyland was acting as a confidential police informant for the Missoula Police Department. During this time he made several requests of Kathy Peterson, his wife's girlfriend, to find out where he could purchase a large quantity of marijuana. Kathy eventually telephoned Don Cripps, an acquaintance of hers in Great Falls, to see if he knew where such a quantity could be purchased. After making several inquiries Cripps told Kathy he could sell Weyland 100 pounds of marijuana.

Weyland then introduced Kathy to Bill Wicks, a narcotics officer for the Missoula Police Department. Weyland concocted a cover for Wicks and told Kathy that Wicks was a common thief and that he was the brother-in-law of Lt. Phil Nobis (then head of the Region I Anti-Drug Team), whom Weyland described as a crooked cop.

On Wednesday, February 2, 1977, Wicks, Weyland and his wife, Kathy Peterson, and another undercover policeman posing as a friend of Wicks, drove to Great Falls to complete the marijuana sale. When they arrived, Wicks and Weyland met Cripps and Chris Wilson in a motel bar to discuss the sale arrangements. They agreed to meet later that night at the Midway Bar, outside of Great Falls near where the exchange was to take place.

About midnight Wilson, Cripps and a third person met Wicks and Weyland at the Midway, but told them that the deal was off for the time being because Wilson had not been able to find his supplier. The third person with Wilson and Cripps was Rob Schreiner, whom the other two had brought along as a "safety man".

When the marijuana transaction fell through that Wednesday night, Wilson told Wicks and Weyland that he could get the marijuana the next day and bring it to Missoula. Wicks and Weyland agreed to this. On Thursday, however, Wilson called Weyland at the Bel Air Motel in Missoula where Weyland was staying and told him that they still could not get the marijuana. Weyland allegedly responded that he would have to send "* * * my big trained ape over there and bounce some heads together". When Weyland asked

if there was any way they could get the marijuana, they told him they would check their other sources. Wilson and Cripps called Weyland back later in the day to tell him that they could not get the marijuana but they could sell him 900 to 1100 hits of LSD which they would bring to Missoula on Friday.

On Friday afternoon, Wilson, Cripps and Schreiner drove from Great Falls to Missoula in Wilson's car. When they arrived at the Bel Air Motel they told Weyland and Wicks that the LSD was coming with two other men. When the two men, James Smith and Dave Ellington, arrived, they told Wicks they only had 800 hits of LSD to sell. After seeing a sample Wicks agreed to purchase the LSD. He directed Wilson, Cripps, Schreiner, Smith and Ellington to drive to the historical marker turnout between Missoula and East Missoula where they would complete the transaction after he had obtained the purchase money.

Wilson, Cripps and Schreiner drove to the exchange point in Wilson's car while Smith and Ellington drove in Smith's pickup. When they arrived at the turnout, police and sheriff's officers converged upon them. The officers held them at gun point, ordered them to exit their vehicles and to lie face down on the ground. The officers then placed them under arrest and searched them. During the course of an on-the-scene warrantless search of both vehicles, the officers found 785 hits of LSD in Smith's pickup and a rifle and a cake pan containing a small amount of marijuana in Wilson's car. Later while conducting full body searches of the five pursuant to their custodial arrest, the officers found an amphetamine tablet in Cripps' pocket and a small amount of marijuana on Wilson.

Informations were filed against the five in District Court, Missoula County. Both Smith and Ellington were charged with counts of conspiracy to sell LSD, possession of LSD, and misdemeanor possession of marijuana. In addition, Ellington was charged with a second count of possession of LSD. In plea bargaining negotiations Smith pleaded guilty to conspiracy to sell LSD and to misdemeanor possession of marijuana. He received a ten year sentence on the conspiracy charge and a one year sentence on the misdemeanor

possession charge, although the ten year sentence was suspended and imposition of the one year sentence was deferred. Ellington pleaded guilty to conspiracy to sell LSD and to possession of LSD and received a 20 year suspended sentence on the conspiracy count and a five year suspended sentence on the possession of LSD count. All other counts against Smith and Ellington were dismissed.

Defendants Wilson, Cripps and Schreiner were charged with counts of conspiracy to sell LSD and misdemeanor possession of marijuana. In addition, Cripps was charged with one count of criminal possession of an amphetamine and Wilson was charged with a second count of misdemeanor possession of marijuana.

Prior to trial Wilson, Cripps and Schreiner moved to dismiss the informations against them on the grounds that the actions of the police officers and police agents constituted entrapment as a matter of law. They also made motions for separate trials and to suppress all the evidence obtained from the search of Wilson's car and from the searches of their persons. The District Court denied all their motions. Defendants then made motions for discovery to which the State voluntarily agreed to provide the requested items.

At trial the jury convicted Wilson but acquitted Cripps and Schreiner of conspiracy to sell LSD. In addition, the jury convicted all three defendants of one count of misdemeanor possession of marijuana and convicted Cripps of the additional count of criminal possession of an amphetamine and Wilson of the second count of misdemeanor possession of marijuana.

The District Court gave Wilson a ten year sentence on the conspiracy count and one year sentence on each of the two misdemeanor possession counts, to run concurrently with the ten year sentence. It did not suspend or defer any of Wilson's sentences. The court gave Cripps a five year sentence on the criminal possession of an amphetamine count and a one year sentence on the misdemeanor possession count, but suspended the sentence upon certain conditions, including payment of a $500 fine. Finally, the court gave Schreiner a one year sentence on the misdemeanor possession count, but also suspended it upon certain conditions, including

payment of a $250 fine. Defendants Wilson, Cripps and Schreiner appealed.

Defendants raised ten issues on appeal, several of which we have consolidated because Wilson's appeal is abated and because of our decision on certain of the issues raised, we find it necessary to discuss only the following issues:

1. Denial of defendants' motion for separate trials;

2. Alleged failure of the prosecution to comply with defendants' discovery motions;

3. Denial of defendants' motion to suppress evidence obtained from Wilson's car and from searches of their persons; and

4. Imposition of fines as a condition to the suspension of Cripps' and Schreiner's sentences.

Defendants' first specification of error concerns their motions for separate trials. On appeal they argue that under the guidelines set out in our decision in *State v. Fitzpatrick* (1977), 174 Mont. 174, 569 P.2d 383, concerning admitting into evidence extrajudicial statements of one defendant which implicate a co-defendant, two statements testified to by Wicks should not have been allowed. These statements were: (1) Wilson told Wicks that Cripps, Schreiner and he had smoked marijuana on their trip from Great Falls to Missoula and that they were "higher than a kite". Cripps and Schreiner, who were standing nearby at the time nodded their heads in agreement and smiled jokingly; (2) While Cripps was in jail he told Wicks that Schreiner's part in the aborted marijuana transaction was to be a "safety man", covering Wilson and Cripps with a rifle from a nearby hill. Prior to trial defendants presented only the second statement as a basis for severance as their defense counsel was then unaware of the first statement. When the prosecution agreed not to introduce the second statement into evidence, the District Court denied defendants' pretrial motions to separate their trials.

At the outset we note that *Fitzpatrick* had not been decided at the time of defendants' trial. Even if we were to apply *Fitzpatrick* ret-

roactively, we find this situation distinguishable and conclude that the guidelines expressed therein are not applicable here.

The guidelines in *Fitzpatrick* were established to protect a defendant's right under the Sixth Amendment of the United States Constitution to confront the witnesses against him. There a witness testified to statements by one defendant, Radi, that incriminated a co-defendant, Fitzpatrick, in the commission of a murder. Because Radi, the declarant, never took the stand, Fitzpatrick was unable to cross-examine him as to his alleged declaration and was thereby denied his constitutional right to confront a witness against him.

Where, however, the declarant testifies as a witness and is subject to full and effective cross-examination, the Confrontation Clause of the Sixth Amendment is not violated by admitting a declarant's out-of-court statements. *California v. Green* (1970), 399 U.S. 149, 158, 90 S.Ct. 1930, 26 L.Ed.2d 489. Where the declarant takes the stand, denies making the alleged out-of-court- statements implicating the defendant, and proceeds to testify favorable to the defendant concerning the underlying facts, the defendant has been denied no right protected by the Sixth Amendment. *Nelson v. O'Neil* (1971), 402 U.S. 622, 629-30, 91 S.Ct. 1723, 29 L.Ed.2d 222.

As to the first statement, Wilson, the out-of-court declarant, took the stand, testified that he never made the statement, and was subject to full and effective cross-examination. As to the second statement, Wicks, the witness to the statement, did not testify about the statement upon direct examination. In response to cross-examination question by defendant's counsel, however, he testified that he had received information that Schreiner was a "security man". The court ordered this statement stricken from the record. In addition, Cripps, the out-of-court declarant of this statement, took the stand but was not examined by Schreiner's counsel about this statement. In light of these events, defendants' right to confront the witnesses against them was not violated. The District Court did not err in denying defendants' motion to separate their trials.

Defendants' second issue involves the prosecution's alleged

failure to comply with defendants' discovery motions. Defendants' pretrial discovery motions asked the prosecution: for written or recorded statements of any person whom the prosecution intended to call as witnesses at trial; for any written or recorded statements and the substance of any oral statement made by defendants; and for any relevant or material information which had been provided by an informant. At trial Wicks testified to statements made to him by Chris Wilson and Kathy Peterson which the prosecution did not reveal to defendants pursuant to their discovery requests, namely: (1) Wilson's alleged statement to Wicks that defendants had smoked marijuana on the trip from Great Falls to Missoula; and (2) Kathy Peterson's alleged statement to Wicks that on several occasions she had ridden with Cripps in his truck and she had seen him hauling loads of marijuana. Defendants argue that in not revealing these statements the prosecution violated its discovery agreement with them and that consequently, the District Court should have stricken these statements from the record. We disagree.

We do not think that Kathy Peterson's statement fell within the scope of defendant's discovery motions. Peterson was neither an informant nor a defendant in the case; she was merely a witness which the prosecution intended to call. As to these witnesses, defendants only requested their written or recorded statements. Peterson's statement was made orally to Wicks and never recorded. Defendants could easily have asked for the substance of any oral statements made by a witness, as they did in the case of statements made by the defendants, but they did not do so. At any rate, defendants never objected to Wicks' testifying to the Peterson statement nor did they move to strike it from the record. They may not now object to its introduction. See *State v. Love* (1968), 151 Mont. 190, 195, 440 P.2d 275.

Wicks' testimony as to Wilson's oral statement is a different matter. That statement did come within the scope of defendants' discovery motions, but defendants did not object to introduction of this statement and moved to strike it only after their counsel had completed his cross-examination of the prosecution's last

witness. A motion to strike evidence must be timely made. *Poindexter & Orr Livestock Co. v. Oregon Short Line Ry.* (1905), 33 Mont. 338,341, 83 P. 886; *Yoder v. Reynolds* (1903), 28 Mont. 183, 194, 72 P. 417.

"* * * 'The practice, whether in civil or criminal cases, of deliberately permitting evidence to be given without objection in the first instance, and then moving to strike it out on grounds which might readily have been availed of to exclude it when offered, is not to be tolerated.' * * *'" *Poindexter*, 33 Mont. 341, 83 P. 887.

In *Poindexter* a witness testified on direct examination to inadmissible hearsay evidence. Opposing counsel did not object at that point, but cross-examined the witness and then moved to strike the hearsay statements. The court held that the motion to strike was not timely made. Here, the time lapse between the objectionable testimony and the motion to strike was even greater. Defendants were first put on notice just prior to trial that the prosecution might introduce the statement. During the prosecution's direct examination of Wicks, he testified to Wilson's statement. As previously indicated, defendant did not object to Wicks' testimony nor move to strike it until defense counsel had completed his cross-examination of the State's last witness. Because this motion was even less timely than the one in *Poindexter* we conclude the District Court did not err in denying it.

Defendants' third issue involves their pretrial motions to suppress evidence. Three searches are involved here: (1) a pat down search of defendants at the time of arrest; (2) a warrantless search of Wilson's car at the scene of the arrest; and (3) a full body search of defendants at the county jail. The first search produced no evidence against Wilson, Cripps or Schreiner. During the second search, police officers found a cake pan in Wilson's car containing less than 60 grams of marijuana. This evidence formed the basis for one count of misdemeanor possession of marijuana against the three defendants. During the third search officers found an amphetamine tablet on Cripps and a small amount of marijuana on Wilson. This evidence formed the basis for one count of criminal

possession of an amphetamine against Cripps and for a second count of misdemeanor possession of marijuana against Wilson. The District Court denied defendants' pretrial motions to suppress the evidence seized from Wilson's car and from their persons.

The State argues that the warrantless search of Wilson's car was valid under either of two theories; (1) a search incident to a lawful arrest, citing section 95-701(a) and 95-702, R.C.M.1947; and (2) a search pursuant to the "automobile exception" to the warrant requirement, citing *Chambers v. Maronex* (1970), 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, and *State v. Spielmann* (1973), 163 Mont. 199, 516 P.2d 617. In addition, it argues that the full body search of defendants' persons was valid as a search incident to a lawful arrest, citing *State ex rel. Kotwicki v. District Court* (1975), 166 Mont. 335, 532 P.2d 694.

We agree with the State that the full body searches of defendants at the county jail were valid and the evidence obtained therefrom was properly admitted. The police officers had probable cause to arrest defendants for conspiracy to sell LSD and their arrests were validly made. It is well settled that law enforcement officers may make a full body search pursuant to a lawful arrest for the purpose of protecting themselves or seizing evidence of the crime. Section 95-702, R.C.M.1947; *Kotwicki*, supra; *United States v. Robinson* (1973), 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427. We conclude, however, that under the circumstances of this case the police officers' search of Wilson's car was not legal under either of the theories the State offers in justification. Therefore, the evidence obtained from the search should have been suppressed.

As to the State's first theory the search of Wilson's car was outside the permissible scope of a search incident to a lawful arrest. Section 95-702, R.C.M.1947, establishes the scope of such a search:

"When a lawful arrest is effected a peace officer may *reasonably search* the person arrested and *the area within such person's immediate presence* for the purpose of:

"(a) Protecting the officer from attack, or

"(b) Preventing the person from escaping, or

"(c) Discovering and seizing the fruits of the crime, or

"(d) Discovering and seizing any persons, instruments, articles or things which may have been used in the commission of, or which may constitute evidence of, the offense." (Emphasis added.)

The United States Supreme Court has held it reasonable for a peace officer pursuant to a lawful arrest to make a warrantless search of the area within the arrested persons' immediate control" construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence. *Chimel v. California* (1969), 395 U.S. 752, 762-63, 89 S.Ct. 2034, 23 L.Ed. 2d 685.

So construing Montana's statute, the evidence seized from Wilson's car was clearly beyond the permissible scope of a search incident to a lawful arrest. Prior to the search of Wilson's automobile, all of the defendants had been removed from their vehicles at gunpoint, told to lie face down on the ground, placed under arrest, given a pat down search and handcuffed. The record is unclear whether defendants were still present at the site of their arrest when Wilson's car was searched. Even so, there is no conceivable way that at the time of the search any of the defendants could have harmed the officers or gained possession of any evidence inside the car. Although there were five defendants and two cars to watch, the defendants were handcuffed and held at gunpoint by at least eight police and sheriff's officers who had arrived on the scene in five vehicles. Under these circumstances we do not think that the search of Wilson's car was within the permissible scope of a search incident to an arrest.

*State v. Turner* (1974), 164 Mont. 371, 523 P.2d 1386, cited by the State in support of its position, is distinguishable from the instant case. In *Turner* the defendant was arrested for D.W.I. While a police officer was driving defendant's vehicle to the police station, he became aware of a beer bottle on the floor of the car. When he leaned over to pick it up, he noticed a bag of marijuana near the beer bottle. This Court held that under section 95-702(d), R.C.M. 1947, the marijuana was admissible in defendant's prosecution for

possession of marijuana. In *Turner* the police officer was legitimately inside defendant's car to begin with. His discovery of the beer bottle and subsequent discovery of the marijuana was not because of an intent on his part to search the vehicle. Under the circumstances, what the officer did in *Turner* was reasonable; here it was not. In the instant case police officers intentionally conducted a search of Wilson's car without benefit of a warrant when there was no chance of defendants harming the police officers nor of their destroying evidence.

The search of Wilson's car is equally invalid under the State's alternative approach, the "automobile exception" to the warrant requirement. The State argues that the only determination the Court must make under this exception is whether the officer conducting the search of the automobile had probable cause to believe it was carrying contraband, citing *State v. Spielmann* (1973), 163 Mont. 199, 516 P.2d 617. This is a misreading of *Spielmann.* The automobile exception to the warrant requirement requires two things (1) the existence of probable cause to search; and (2) the presence of exigent circumstances, that is, was it not practicable under the circumstances to obtain a warrant. *State v. Amos* (1974), 164 Mont. 182, 520 P.2d 773; Coolidge v. New Hampshire (1971), 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564, reh. den. 404 U.S. 874, 92 S.Ct. 26, 30 L.Ed.2d 120. In *Spielmann* the presence of exigent circumstances was obvious; thus, the Court's attention focused on the probable cause requirement. Here, however, we do not find exigent circumstances present. This was not a stop of defendants' cars on the highway itself. Wicks, pursuant to a previously worked out plan for defendants' arrest, directed defendants to meet him at a historical marker turnout. Once defendants arrived at the designated spot, police and sheriff's officers converged en masse upon the two vehicles and overwhelmed the defendants. We find no exigent circumstances here. Therefore, the marijuana seized from the cake pan in Wilson's car should have been suppressed.

Defendants' final issue related to the District Court's imposition of a fine as a condition to its suspending defendants' sentences. The

District Court suspended Cripps' sentences upon certain conditions, including payment of $500 fine and suspended Schreiner's sentence upon certain conditions, including payment of a $250 fine. Defendants argue that under our recent decision in *State v. Babbit* (1978), . . . Mont. . . . , 574 P.2d 998, 35 St.Rep. 154, the District Court improperly imposed a fine as a condition of suspending their sentences.

*Babbit* dealt with a defendant who was convicted of criminal possession of dangerous drugs and given a deferred imposition of sentence. As one of the conditions to the defendant's deferred imposition, the District Court ordered defendant to pay a $200 fine. The offense of which Babbit was convicted provided for imposition of a prison term upon conviction, but not for imposition of a fine. We ruled that under our sentencing statute, section 95-2206(1), R.C.M.1947, (amended 1977), a fine could not be imposed as a condition to a deferred imposition of sentence where there was not a reasonable association between the fine imposed and the crime committed or where it was not found to be a reasonable or necessary condition of probation or for the protection of the public. *State v. Babbit*, 574 P.2d 1001. We held that under the circumstances of that case, a fine could not be imposed as a condition to the deferred imposition of sentence.

The statutory restrictions and conditions allowable on a suspended execution of sentence are identical to those allowable on a deferred imposition of sentence:

"95-2206. *Sentence.* Whenever any person has been found guilty of a crime or offense upon a verdict or a plea of guilty the court may:

"(1) Defer imposition of sentence for a period not to exceed one (1) year for any misdemeanor; for a period not to exceed three (3) years for any felony. The sentencing judge may impose upon the defendant any reasonable restrictions or conditions during the period of the deferred imposition. Such reasonable restrictions or conditions may include:

"(a) jail base release;

"(b) jail time not to exceed ninety (90) days;

"(c) conditions for probation;

"(d) restitution;

"(e) any other reasonable conditions deemed necessary for rehabilitation or for the protection of society;

"(f) any combination of the above.

"(2) Suspend execution of sentence up to the maximum sentence allowed for the particular offense. The sentencing judge may impose on the defendant any reasonable restrictions during the period of suspended sentence. Such reasonable restrictions may include:

"(a) jail base release;

"(b) jail time not to exceed (90) days;

"(c) conditions for probation;

"(d) restitution;

"(e) any other reasonable conditions deemed necessary for rehabilitation or for the protection of society;

"(f) any combination of the above.

"If any restrictions or conditions are violated, any elapsed time, except jail time, shall not be a credit against the sentence, unless the court shall otherwise order."

Imposition of a fine is not specific as an allowable restriction or condition upon deferred imposition of sentence or upon suspended execution of sentence. Because the restrictions and conditions for deferred imposition of sentence and suspended execution of sentence are identical, the same guidelines for imposition of a fine as a condition to deferring imposition of a sentence must be followed in determining whether a fine may be imposed as a condition to suspending execution of a sentence. There either must be a reasonable relationship between the fine imposed and the offense committed or the fine must be a reasonable or necessary condition of the probation or for the protection of the public. *State v. Babbit*, 574 P.2d 1001.

Defendants Cripps and Schreiner were convicted of one count of misdemeanor or possession of marijuana and Cripps was

convicted of one count of criminal possession of amphetamines. Upon conviction of misdemeanor possession of marijuana the court have fined the defendants or imprisoned them, or both. Section 54 133(b), R.C.M.1947 (amended 1977). Upon conviction of criminal possession of an amphetamine the court was required to sentence Cripps to prison for a maximum of five years. Section 54-133(c), R.C.M.1947 (amended 1977). At sentencing the court could, among other things, suspend execution of sentence upon the restrictions mentioned earlier, impose a fine as provided by law, or impose a combination of both. Section 95-2206(2), (3) and (5), R.C.M.1947 (amended 1977). We do not think, however, that this provision in itself, allows the sentencing court to make payment of a fine a condition to suspend execution of the sentence.

■ Additionally, we find no reasonable association between the fines imposed upon Cripps and Schreiner and the offenses committed nor do we find these fines to be reasonable or necessary conditions of probation or for the protection of the public. We therefore hold the imposition of these conditions of probation, which require Cripps and Schreiner to pay $500 and $250 respectively, to Missoula County as conditions of probation, a nullity and of no force or effect.

The appeal of Wilson is dismissed. Cripps' and Schreiner's convictions of misdemeanor possession of marijuana based on the evidence seized from Wilson's car are reversed and remanded. Cripps' conviction of criminal possession of an emphetamine is affirmed, but the condition of his probation imposing a fine is declared null and void.

Reversed in part and affirmed in part.

MR. JUSTICES DALY, HARRISON, SHEA and SHEEHY concur.