No. 80-29

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

STATE OF MONTANA,

Plaintiff and Appellant,

vs.

JOEL JON ULRICH,

Defendant and Respondent.

---

Appeal from:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
Honorable Robert Sykes, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Mike Greely, Attorney General, Helena, Montana
Ted O. Lympus, County Attorney, Kalispell, Montana
Dennis J. Hester argued, Deputy County Attorney,
Kalispell, Montana

For Respondent:

Daley, Sherlock & Nardi, Kalispell, Montana
Stephen J. Nardi argued, Kalispell, Montana

---

Submitted:  February 28, 1980

Decided:  APR 1 5 1980

Filed:  1 1980

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an interlocutory appeal by the State of Montana from a judgment of the District Court of the Eleventh Judicial District, in and for Flathead County, suppressing certain evidence in the case of Joel Jon Ulrich, who is charged with the offense of deliberate homicide.

Testimony received at the preliminary hearing held on August 10, 1979, and at the suppression hearing held on January 4, 1980, indicates that Carolyn Wiley died in her Columbia Falls trailer house as a result of a gunshot wound inflicted in the late evening hours of July 14 or the early morning hours of July 15, 1979. Death was caused by a small caliber bullet entering the back of her head.

At approximately 8:00 a.m. on July 15, 1979, Officer Gregory Dawson of the Columbia Falls Police Department arrived at the trailer house occupied by defendant, Joel Jon Ulrich, and the deceased, Carolyn Wiley, and located the body of Ms. Wiley. During an investigation conducted that morning by Officer Dawson and other officers of the Columbia Falls Police Department, information received from interviews indicated that Carolyn Wiley and defendant had been living together for approximately three years; that they had been arguing the day preceding her death; and that defendant was the last person seen with her in the trailer.

At about 2:30 p.m. that same day, defendant Ulrich walked into the Columbia Falls police station and asked, "Will someone tell me what's going on . . .?" He was taken to the office of the chief of police and placed under arrest. He was then given his Miranda rights. At that time, defendant stated that he was not going to say any more until he saw an attorney. Defendant was asked some questions and

several times informed the officers that he wished to have an attorney present. During this time period, Officer Dawson entered the room, prepared his equipment, and performed a neutron activation test upon defendant.

The neutron activation test involves running cotton swabs over the fingers, palms, and top of the hands. The swabs are then placed in a special kit and mailed to a scientific laboratory for examination to determine the presence of barium and antimony, the residue of gunpowder.

At no time did the defendant consent to the taking of the neutron activation test. At no time up to and during the taking of the test was defendant's counsel present or had he consulted with counsel. At no time up to and during the swabbing of defendant's hands did he voice a refusal or offer any physical or verbal resistance to the administration of the neutron activation test. No force of any kind was used in the administration of the neutron activation test by Officer Dawson.

Ulrich was charged with the offense of deliberate homicide by complaint dated July 16, 1979. He has entered a plea of not guilty. On December 26, 1979, defendant filed a motion to suppress the results of the neutron activation test on the grounds that it was an unreasonable and illegal search and seizure under the Fourth Amendment. He also sought to suppress other evidence as being in violation of his rights against self-incrimination under the Fifth Amendment and Miranda, and in violation of his Sixth Amendment right to counsel.

A hearing on the motion to suppress was held on January 4, 1980, at which time the District Court made findings of fact and conclusions of law and ordered certain items of

-3-

evidence suppressed. The District Court found as a matter of law that the arrest of defendant at the Columbia Falls police department was lawful and proper in that there was probable cause to arrest defendant at that time. The Court also determined as a matter of law that the taking of the neutron activation test without having afforded defendant his right to counsel and without obtaining his affirmative consent violated his constitutional rights. Such evidence obtained was thereby ordered suppressed. The District Court's findings, however, are unclear as to the specific legal basis for suppressing the results of the neutron activation test.

Pursuant to section 46-20-103(2)(e), MCA, the State of Montana appeals only that part of the order suppressing the results of the neutron activation test and presents the following issues for review:

1. Whether defendant's Fourth Amendment right to be secure against unreasonable searches and seizures was violated by the administration of a neutron activation test without a search warrant immediately after his arrest?

2. Whether defendant's Fifth Amendment rights against self-incrimination were violated by administering the neutron activation test?

3. Whether defendant's Sixth Amendment right to counsel applies to the administration of the neutron activation test?

The State contends that the administration of a neutron activation test by police officers upon defendant after a lawful and proper arrest is within the authority of the officer's right to search the defendant's person incident to a lawful arrest under the Fourth Amendment of the United

States Constitution and under sections 46-5-102(4) and 46-5-101(1), MCA. The manner of search was reasonable under the standards set forth in Schmerber v. California (1966), 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. The Fourth Amendment does not prohibit all searches and intrusions, only those "which are not justified in the circumstances, or which are made in an improper manner," i.e., "unreasonable." Schmerber, 384 U.S. at 768.

Defendant contends that the State failed to meet its burden of proof at the suppression hearing to make an affirmative showing that the evidence seized by the neutron activation test could or would have been destroyed or lost had a search warrant been obtained, citing Cupp v. Murphy (1973), 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900; Schmerber, supra; and State v. Cripps (1979), ____ Mont. ____, 582 P.2d 312, 35 St.Rep. 967. Therefore, the District Court properly suppressed any evidence relating to the taking of or results from the neutron activation test. Furthermore, defendant argues that there could be no valid search incident to arrest because there was insufficient probable cause to allow a warrantless arrest, and defendant's arrest was therefore unlawful.

First, we take note that the trial court found probable cause and a legal arrest. This issue has not been appealed, and is not before this Court.

This appeal concerns the permissible scope of a warrantless search incident to arrest where the material seized from the person of the defendant constitutes evidence of the offense. "It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." United States v.

Robinson (1973), 414 U.S. 218, 224, 94 S.Ct. 467, 38 L.Ed.2d 427. See also United States v. Edwards (1974), 415 U.S. 800, 802, 94 S.Ct. 1234, 39 L.Ed.2d 771. A search incident to a lawful arrest requires no additional justification if it is within the permissible scope, Robinson, 414 U.S. at 235, and there is no requirement that the State make a showing that the evidence is destructible.

> "The constitutionality of a search incident to arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search. United States v. Robinson . . ." Michigan v. Defillippo (1979), ____ U.S. ____, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343.

Additionally, although the fact that there was evidence upon defendant's person that could be destroyed or lost over a period of time was a factor considered by the Court in Schmerber and in Cupp v. Murphy, supra, the evidence in this case was also destructible or subject to loss with the passage of time, as were the fingernail scrapings in Cupp and the blood sample in Schmerber.

We are of the opinion that the administration of a neutron activation test by police officers upon defendant following his arrest was within the permissible scope of a search incident to a lawful arrest under the Fourth Amendment. To begin with, the Fourth Amendment does not prohibit all searches and seizures, only those which are "unreasonable"; i.e., "which are not justified in the circumstances, or which are made in an improper manner." Schmerber, 384 U.S. at 768. Any intrusion involved in this case was minimal, and the search and the manner in which it was conducted were reasonable under the standards set forth by the United States Supreme Court in Schmerber and Cupp.

In affirming the defendant's conviction for operating a motor vehicle while under the influence of intoxicating liquor, a majority of the Court in Schmerber held that the extraction from the defendant of a blood sample to test for alcohol as an incident to his arrest was not an unreasonable search. The Court compared searches of dwellings and "intrusions into the human body," and went on to observe that the taking of a blood sample to prevent the destruction of evidence was justified by the emergency nature of the search: "We are told that the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system." 384 U.S. at 770.

There is no doubt an affirmative showing was made in Schmerber, but it is highly questionable that this becomes part of the rule. In any event, we do not have an intrusion of the body in this case, so we view the matter in a softer light than the defendant and look to a more factually similar case for direction.

In Cupp v. Murphy, supra, the suspect voluntarily appeared at the police station for questioning concerning the strangulation death of his wife, at which time the police noticed what appeared to be dried blood on his finger. The suspect had not been formally placed under arrest, although the police had probable cause to arrest him at that time. He attempted to rub the evidence off his hands after refusing to consent to the taking of a fingernail sample. Against his will and without obtaining a search warrant, the police took scrapings from the defendant's fingernails which produced incriminating evidence. The Supreme Court held that the search did not violate the defendant's Fourth Amendment rights:

"We believe this search was constitutionally permissible under the principles of Chimel v. California, 395 U.S. 752 . . . <u>Chimel</u> stands in a long line of cases recognizing an exception to the warrant requirement when a search is incident to a valid arrest . . . The basis for this exception is that when an arrest is made, it is reasonable for a police officer to expect the arrestee to use any weapons he may have and to attempt to destroy any incriminating evidence then in his possession . . . The Court recognized in <u>Chimel</u> that the scope of a warrantless search must be commensurate with the rationale that excepts the search from the warrant requirement.

". . .

". . . The rationale of <u>Chimel</u>, in these circumstances, justified the police in subjecting him to the very limited search necessary to preserve the highly evanescent evidence they found under his fingernails . . .

"On the facts of this case, considering the existence of probable cause, the very limited intrusion undertaken incident to the station house detention, and the ready destructibility of the evidence, we cannot say that this search violated the Fourth and Fourteenth Amendments." <u>Cupp</u>, 412 U.S. at 295-96.

The rationale of these holdings is that the permissible scope of a search incident to a lawful arrest, when the officers are searching for evidence of the offense, is restricted to where the evidence seized was of such a nature that it was likely to be lost or destroyed if not immediately seized. Contrary to defendant's contentions, however, these cases do not impose upon the State a burden of making an affirmative showing that the evidence seized was of such a nature that it was likely to be lost or destroyed if not immediately seized. In any event, the State in its trial brief informed the District Court that after a period of time the presence of gunpowder residues on the defendant's hand can change and finally be destroyed so that the evidence in fact disappears. Furthermore, this Court has upheld a full body search incident to a custodial arrest in

State v. Cripps (1978), ____ Mont. ____, 582 P.2d 312, 35 St.Rep. 967, where the police had probable cause to arrest the defendants and found illegal drugs in one defendant's pocket and on the other defendant during a jailhouse search. We said:

> "It is well settled that law enforcement officers may make a full body search pursuant to a lawful arrest for purposes of protecting themselves or seizing evidence of the crime." Cripps, 582 P.2d at 318.

In the same case, a search of the defendant's car for illegal drugs conducted at the scene of the arrest was held improper "when there was no chance of defendant's harming the police officers nor of their destroying their evidence." 582 P.2d at 319.

From the uncertainty of the trial court's order, we should comment beyond the Fourth Amendment to avoid any future delay in this matter.

The administration of a neutron activation test upon defendant did not violate his rights under the Fifth Amendment because the Fifth Amendment protects only against compelling "evidence of a testimonial or communicative nature." Schmerber, 384 U.S. at 761. The gunpowder residues taken from defendant's hands do not meet this criteria.

The Sixth Amendment right to counsel does not apply to these circumstances. An initial search of a defendant incident to arrest does not require the presence of counsel because the defendant's right to counsel attaches only at the time adversary judicial proceedings have been initiated against him by way of a formal charge. See Kirby v. Illinois (1972), 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411.

The judgment of the trial court is reversed on the one issue appealed from said judgment, suppression of the results of the neutron activation test. The cause is remanded for further proceedings.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

Mr. Justice John C. Sheehy dissenting:

The holding of the District Court is not unclear to me. It found that no reason existed for the police not seeking a search warrant before applying the neutron activation test:

> ". . . There is no showing that a warrant was not available under the procedure in Montana for securing same, nor is there any showing that the neutron activation test could not have been obtained at that time through proper request, and it's unfortunate; that the Court is of the opinion that such could have been taken within that time and it would have been permissible.. . ."

Neither Cupp v. Murphy (1973), 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900, nor Schmerber v. California (1966), 384 U.S. 757, ___ S.Ct. ___, ___ L.Ed.2d ___, are applicable in this case, and do not support the majority. In Cupp, the Court found that the fingernail scrapings were evanescent; in Schmerber, the Court found the prejudicial evidence in the blood sample would disappear. Here, the District Court found no such situation. There is no evidence here, as the District Court found, that the incriminating evidence would disappear before a search warrant could be obtained. To say that the State has no burden to make an affirmative showing that the object of the search might be lost or destroyed is to say that the State never needs to justify a warrantless search if the search reveals some incriminating evidence. Under that rationale, we can kiss the Fourth and Fifth Amendments goodbye.

_John C. Sheehy_
Justice

-11-