No. 82-65

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

THE STATE OF MONTANA,

                Plaintiff and Respondent,

    vs.

THOMAS MATTHEW DESS,

                Defendant and Appellant.

---

Appeal from:  District Court of the Eighth Judicial District,
            In and for the County of Cascade
            Honorable John M. McCarvel, Judge presiding.

Counsel of Record:

    For Appellant:

        Karl Nagel argued, Great Falls, Montana

    For Respondent:

        Hon. Mike Greely, Attorney General, Helena, Montana
        J. Fred Bourdeau, County Attorney, Great Falls, Montana
        Randall Snyder argued, Deputy County Attorney, Great Falls,
        Montana

---

                  Submitted:  September 17, 1982

                  Decided:  December 16, 1982

Filed:  DEC 16 1982

*Thomas J. Kearney*
                          Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant appeals from a jury conviction of felony theft in the Eighth Judicial District Court, Cascade County. He raises a single issue: Whether the District Court erred in denying his motion to suppress certain evidence. We affirm the District Court, finding that defendant lacked standing to challenge the constitutionality of both the search and seizure of evidence, as he had no reasonable expectation of privacy in the area searched.

Shortly before midnight, July 6, 1981, a couple (Stimsons) who owned a liquor store in Neihart, Montana, reported the theft of two bottles of Southern Comfort whisky from their store. They named as suspects two juveniles whom they had seen that evening in the company of defendant. Three deputies who were en route to Neihart were notified that Stimsons' Jeep Wagoneer had also been stolen from their garage adjacent to the liquor store. Stimsons informed the officers that defendant's party of five persons, whom they named, was cutting wood in the National Forest out of Neihart. The officers knew defendant was the only adult in the party. Knowing the area in which defendant cut wood, the deputies drove their two police cars up to the Moose Park camping area in the National Forest at about 1:00 a.m.

As they approached one campsite, the deputies recognized the green pickup truck described by Stimsons which the deputies knew belonged to defendant's mother; they drove their cars up to the campsite, with the headlights illuminating the camp. No one was present, but the three officers could see a pickup camper on the ground, and numerous items lying in the open around the campsite. Some of the items appeared brand new, others out of place: Forest Service snowshoes (in July), fancy cut glass lanterns, a non-portable T.V., stereo and tape deck in a place far from any

outlet. The deputies suspected the items were stolen, but did not seize them immediately. Instead they photographed them and took down serial numbers, then drove a short distance away from the campsite.

Within a few minutes one of the deputies heard a shout and running footsteps. The deputies all returned to the campsite, and found evidence that someone had just been there--the camper door, which had been open, was now closed, a garbage can of groceries which had been outside the camper was now inside, and several of the items the officers suspected were stolen had been pushed behind trees, partially concealed under the pickup truck, or half-covered by sleeping bags. No one was there, so the deputies left again and returned in about twenty minutes. This time they found defendant and his four companions at the campsite.

No arrest or seizure of evidence was made at that time, but two of the deputies remained at the campsite with the party, while a third (Officer Halvorson) drove back to Neihart to determine whether any of the property seen lying around the campsite belonged to the Stimsons. It did not. Officer Halvorson then returned to the campsite and arrested defendant for endangering the welfare of a minor. All of the party were taken to the sheriff's office in the deputies' cars. The items in sight on the ground were seized; the camper was restored to the pickup and the pickup was towed into town. One other member of the party was charged with violating probation; no charges were brought against the other three.

Accounts of the witnesses vary widely as to the time that elapsed between the deputies' third appearance at the campsite and defendant's arrest and as to the freedom the party had while Officer Halvorson went to Neihart. It is obvious that the delay was well over half an hour, and that

the party reasonably believed they were not free to depart. Defendant made no claim to ownership of the property, although his girlfriend claimed to own the lanterns.

Within several hours of the return to the sheriff's office, the seized items were identified as belonging to two burglarized cabins in Neihart. Defendant was charged with burglary and felony theft. Ten days after defendant's arrest, two juvenile members of the party (nephews of defendant) led deputies to the stolen Jeep, which had been stuck and abandoned on a back road near the campsite. Warrants were obtained to search the Jeep and the pickup/camper; more evidence of theft from the two cabins in Neihart was discovered. Defendant pleaded not guilty to three counts of felony theft, two counts of burglary, and two counts of felony mischief. The charge against defendant, of endangering the welfare of children, was dismissed as being without probable cause.

The District Court denied defendant's motion to suppress evidence seized at the campsite and from the vehicles, finding that the evidence "was not obtained by reason of the arrest of the Defendant or any illegal action." A jury found defendant guilty of three counts of felony theft. Defendant appeals, asserting that the District Court committed reversible error in denying his motion to suppress evidence. He argues that the seizure of the evidence at the campsite was incident to his arrest without probable cause, indeed, that the arrest was merely a pretext for seizing the items. He further argues that the evidence seized in the search of the vehicles and camper  must be suppressed as "fruit of the poisonous tree," tainted by the initial illegal seizure, and that the trial court's failure to suppress the evidence constitutes reversible error.

The first and dispositive question is whether defendant possessed standing to raise a Fourth Amendment challenge to the admission of the evidence seized from the campsite and from the vehicles. Defendant has claimed no possessory interest in the evidence; in fact, he disclaimed such an interest before the trial court. Furthermore, he admits to having a "diminished" expectation of privacy in that the items initially seized were in plain sight on public land. His position is that not the search, but the seizure, violated the Fourth Amendment, and thus the evidence seized at the campsite, and all evidence gathered by exploration of that seizure, must be suppressed.

We do not agree. After consideration of those United States Supreme Court cases which interpreted, and, in 1980, renounced the "automatic standing" rule articulated in Jones v. United States (1960), 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, we find that defendant had no reasonable expectation of privacy in the campsite at Moose Camp and therefore he lacked standing to assert a Fourth Amendment objection to admission of the evidence found and seized there. We also find that since the evidence seized from the vehicles and camper was not tainted by any illegal seizure at Moose Camp, it, too, was properly admitted at trial.

The history of the "automatic standing" rule first adopted in Jones, supra, is clearly set forth in United States v. Salvucci (1980), 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619, wherein that rule was explicitly overruled. In Jones, the Supreme Court established an exception to the rule that only one who established that he himself was the victim of an invasion of privacy could challenge the legality of a search as the basis for suppressing relevant evidence.

> ". . .[i]n cases where possession of the seized
> evidence was an essential element of the offense
> charged, the [Jones] Court held that the defendant
> was not obligated to establish that his own Fourth

Amendment rights had been violated, but only that the search and seizure of the evidence was unconstitutional. Upon such a showing, the exclusionary rule would be available to prevent the admission of the evidence against the defendant." United States v. Salvucci, 448 U.S. at 87, 100 S.Ct. at 2550, 65 L.Ed.2d at 625.

The Jones rule was seen as meeting two needs. Any defendant who asserted a possessory interest in incriminating evidence prior to Jones risked having that assertion used against him at trial. The State was allowed to assert that a defendant possessed the goods for purposes of criminal liability and that he did not possess them for purposes of claiming Fourth Amendment protection.

"Thus in order to prevent both the risk that self-incrimination would attach to the assertion of Fourth Amendment rights, as well as to prevent the 'vice of prosecutorial self-contradiction,' [citation omitted] the Court adopted the rule of 'automatic standing.'" United States v. Salvucci, 448 U.S. at 88, 100 S.Ct. at 2551, 65 L.Ed.2d at 626.

Since 1960, a number of Supreme Court cases prior to Salvucci substantially eroded the need for the "automatic standing" rule. In Simmons v. United States (1968), 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, the Supreme Court held that testimony given by a defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial, eliminating the defendant's dilemma identified in Jones. Thus, even without Jones, the defendant is no longer obliged to sacrifice either a Fourth Amendment right or a Fifth Amendment right. Salvucci also noted:

"The simple answer is that the decisions of this Court, especially our most recent decision in Rakas v. Illinois, 439 U.S. 128 (1978), clearly establish that a prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction. To conclude that a prosecutor engaged in self-contradiction in Jones, the Court necessarily relied on the unexamined assumption that a defendant's possession of a seized good sufficient to establish criminal culpability was also sufficient to establish Fourth Amendment 'standing.' This assumption, however, even if correct at the time, is no longer so.

-6-

". . .

> "As we hold today in <u>Rawlings v. Kentucky</u>,
> <u>post</u>., p. 98, legal possession of a seized
> good is not a proxy for determining whether
> the owner had a Fourth Amendment interest
> for it does not invariably represent the
> protected Fourth Amendment interest." 448
> U.S. at 90-91, 100 S.Ct. at 2552-3, 65 L.Ed.2d
> at 627-628.

<u>Salvucci</u> concluded that while property ownership is "a factor" in determining whether Fourth Amendment rights have been violated, "<u>an illegal search only violates the rights of those who have 'a legitimate expectation of privacy in the invaded place</u>.'" 448 U.S. at 91-92, 100 S.Ct. at 2553, 65 L.Ed.2d at 628 (emphasis supplied), citing <u>Rakas v. Illinois</u> (1978), 439 U.S. 128, 99 S.Ct. 421, 58 L.Fd.2d 387.

In abandoning the "automatic standing" rule, the <u>Salvucci</u> court stated:

> "As in <u>Rakas</u>, we again reject 'blind adherence' to
> the other underlying assumption in <u>Jones</u> that
> possession of the seized good is an acceptable
> measure of Fourth Amendment interests. As in
> <u>Rakas</u>, we find that the <u>Jones</u> standard 'creates
> too broad a gauge for measurement of Fourth
> Amendment rights' and that we must instead engage
> in a 'conscientious effort to apply the Fourth
> Amendment' by asking not merely whether the
> defendant had a possessory interest in the items
> seized, but whether he had an expectation of
> privacy in the area searched. Thus neither
> prosecutorial 'vice,' nor the underlying assump-
> tion of <u>Jones</u> that possession of a seized good is
> the equivalent of Fourth Amendment 'standing'
> to challenge the search, can save the automatic
> standing rule." 448 U.S. at 92-93, 100 S.Ct. at
> 2553, 65 L.Ed.2d at 629.

This Court has recognized and followed the Supreme Court's shift in emphasis. In State v. Allen (1980), _____ Mont. _____, 612 P.2d 199, 37 St.Rep. 919, a defendant who permanently resided at his girlfriend's apartment was found to have standing to challenge the legality of the search and seizure of that apartment; in State v. Isom (1982), _____ Mont. _____, 641 P.2d 417, 39 St.Rep. 137, a defendant, who was an overnight guest and the sole occupant of his uncle's house at the time of the search, with the right to exclude others, had standing to challenge a police search of the

house. The defendant's disclaimer of ownership of a vehicle during custodial interrogation did not deprive him of standing to contest the search of that vehicle. His disclaimer of ownership of the vehicle did not affect defendant's standing to contest the search of garbage bags found in the trunk of the car. In both Isom and Allen, this Court recognized "a legitimate expectation of privacy," as the primary test for determining standing, although such tests as disclaimer of ownership, "legitimately on the premises" and permanence of presence on premises were factors to be considered in determining standing.

Let us consider the facts of this case in light of the above cases. Standing has been found where there was temporary residence in a building, or where the defendant owned the structure or vehicle searched. The reasonableness of his expectation of privacy turned on the defendant's right to exclude others from the premises. The premises in question concealed the presence of incriminating evidence, or shielded the defendant from police discovery of incriminating behavior.

Here, the "temporary residence" was public property, a National Forest campsite, where defendant had set his camper top and a few pieces of property (no tent); there were no people present; and the suspicious character of the items strewn about the campsite was exposed for all to see. Defendant himself correctly concedes that the deputies had a legal right to be where they were. He admits that, under State v. Charvat (1978), 175 Mont. 267, 269, 573 P.2d 660, 661, such areas as an "open field, farmland, or a corral" are not embraced within the constitutional guarantee of unreasonable searches and seizure, and, thus, the intrusion into the camp was permissible. He admits that the location of the campsite on public land next to a public road led to a diminished expectation of privacy.

Defendant would have this Court separate the search, which he himself concedes is constitutional, from the seizure, which he argues occurred without probable cause to believe the items seized were stolen. However, the facts of this case, and defendant's own concessions, finally establish that defendant had no reasonable expectation of privacy in the area searched as to the items he sought to suppress, whether on account of the search or the seizure.

Even if we were to separate the seizure from the search, it is evident that probable cause existed for the deputies to reasonably believe the items seized from Moose Camp were stolen, and that, as the trial judge ruled, the seizure was not incident to defendant's arrest for endangering the welfare of a minor. The appearance of the items alone roused the officers' suspicion that they were stolen. Some of them were brand-new (still in wrappings). Others were electrical appliances, obviously not portable, lying around a campsite where there was no outlet. There were Forest Service snowshoes (in July) and fancy glass lanterns. Still more suspicious was the evidence of attempted concealment by the campers of both themselves and the property. In the few minutes that the officers were absent from the camp after their first visit, the suspicious items (T.V., stereo, tape deck, etc.) were moved behind trees and under the pickup, or were partially covered by sleeping bags. When the officers entered camp the third time, they saw the campers, including defendant, "crouching" or otherwise attempting to conceal themselves.

Probable cause does not require absolute proof that a crime was committed, that the persons taken into custody committed it, or that the evidence seized is contraband or the fruit of a crime. This Court has frequently stated that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause. State

v. Troglia (1971), 157 Mont. 22, 482 P.2d 143.  Nor does the officers' attempt to establish more firmly that the items were stolen indicate that probable cause to seize the items did not exist without the additional proof.  We find that there was probable cause to support the seizure of the items at the Moose Camp.  The fact that the items were seized at the same time defendant was arrested for an unrelated crime does not establish that they were seized incident to that arrest.

This Court has also held that absent exigent circumstances, evidence cannot be seized without a warrant, despite the observation of evidence in plain sight and the existence of probable cause.  State v. Lane (1977), 175 Mont. 225, 573 P.2d 198.  In the case at bar, however, the deputies were faced with three alternatives besides warrantless seizure of the evidence.  They could have taken in only one or two of the party, and left the others in camp with the evidence, despite the fact that efforts had already been made by defendant's party to conceal the evidence. Those left behind would undoubtedly have destroyed or hidden the evidence as soon as the officers left.  Or, the officers could have simply left the items unguarded out in the open in a public spot, and returned hours or days later with a warrant.  Finally, they could have left one officer at the campsite, guarding the property, while they took defendant's party in, obtained a warrant, and returned many miles to pick up the evidence.  None of the alternatives to seizure is acceptable; clearly, circumstances existed which made seizure, even without a warrant, the only reasonable way to protect the evidence.  Exigent circumstances, although jealously limited, are not absolutely limited.  This is one case where the unusual situation amounted to exigent circumstances.

The District Court committed no error in denying defendant's motion to suppress.  Affirmed.

_____
Justice

-10-

We concur:

_Jun Conway Harrison_

_Daniel J. Shea_

_John E. Sheehy_

_Frank B. Morrison Jr._