No. 89-513

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

CITY OF BILLINGS,

        Plaintiff and Appellant,

  -vs-

TIMOTHY J. WHALEN,

        Defendant, Respondent, and Cross-Appellant,

APPEAL FROM:  District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable Robert Holmstrom, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

          Hon. Marc Racicot, Attorney General, Helena, Montana
Jennifer Anders, Asst. Atty. General, Helena
Russell C. Fagg, City Prosecutor, Billings, Montana


      For Respondent:

          Michael J. Whalen, Billings, Montana


Submitted on Briefs:  Feb. 9, 1990

Decided:  April 5, 1990

Filed:

_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Plaintiff and appellant, the City of Billings, appeals from an order of the District Court of the Thirteenth Judicial District, Yellowstone County, which granted the motion to suppress all evidence against the defendant, Timothy J. Whalen and denied the defendant's motion to dismiss the complaint for lack of speedy trial. We affirm the District Court order on the motion to suppress and dismiss defendant's cross-appeal of the order for lack of jurisdiction. The issues raised on appeal are:

(1) Did the District Court err in granting defendant's motion to suppress evidence obtained from an illegal arrest in violation of § 46-6-105, MCA?

(2) Does this Court have jurisdiction over defendant's cross-appeal to dismiss the complaint for lack of speedy trial?

On October 28, 1988, at approximately 10:15 p.m., the defendant was driving north on North 31st Street in Billings, Yellowstone County, Montana. It was dark outside. As he reached 8th Avenue North, defendant made a left-hand turn onto 8th Avenue and continued to travel along 8th Avenue in a westerly direction. While he was in the process of making his left-hand turn, defendant observed a police car traveling in an easterly direction on 8th Avenue.

The officer driving the police car stated that defendant, "cut the corner," when making the left-hand turn. Such activity is a misdemeanor traffic violation. Because of this activity, the officer made a U-turn with his vehicle and followed defendant to his home which was approximately two blocks from the point defendant made the questioned left-hand turn. During the time the officer followed the defendant he did not observe anything unusual in defendant's manner of driving. At no time while he was following defendant did the officer activate the siren or the overhead lights on his vehicle.

2

Defendant arrived at home and pulled into his driveway. He parked his car, walked to the front door, opened the outer or storm door and began to enter the house. While defendant was performing these activities he noticed the officer's police car pull into his driveway behind his parked car, still with no lights or siren. Defendant was in a position of straddling the threshold of his home when the officer approached defendant from behind and shouted or called to the defendant to hold on or wait. It is unclear from the record if at that point the officer physically restrained defendant from entering the house or if such restraint occurred after the officer asked defendant for his driver's license and defendant attempted to enter the house to obtain the license. In either event, the officer placed his hands on the defendant to prevent the defendant from entering the house. Defendant described the restraint as being pulled from the house and the officer described the restraint as "guiding" the defendant.

The officer asked defendant for evidence of insurance and registration. As they walked toward defendant's car a second police vehicle had arrived. The officer asked defendant to perform certain field sobriety tests after which defendant was handcuffed and placed in the officer's police vehicle. Defendant was taken to the Yellowstone County Courthouse where a video tape DUI interview was conducted.

Defendant was charged with a DUI offense. On December 30, 1988, defendant was tried in City Court and was convicted on January 16, 1989. On January 16, 1989, the defendant appealed his conviction to District Court. On January 24, 1989, an omnibus hearing was set for April 18, 1989 and a trial date of May 8, 1989. The District Judge issued a new order setting the omnibus hearing for September 1, 1989 and trial for September 18, 1989.

On August 31, 1989, defendant filed consolidated motions to suppress evidence and dismiss the complaint with an alternative request for an evidentiary hearing. On September 14, 1989, the District Court granted defendant's motion to suppress all evidence on the grounds that defendant was illegally arrested and denied

3

defendant's motion to dismiss the complaint due to denial of speedy trial. The State appeals the District Court's order granting defendant's motion to suppress. Defendant cross-appeals the District Court order denying defendant's motion to dismiss.

The first issue raised on appeal is whether there is sufficient evidence of the elements of § 46-6-105, MCA, to support the District Court's conclusion that a violation of such statute occurred which resulted in the illegal arrest of the defendant. The statute states in relevant part:

> An arrest may be made on any day and at any time of the day or night, except that a person cannot be arrested in his home or private dwelling place at night for a misdemeanor committed at some other time and place unless upon the direction of a magistrate endorsed upon a warrant of arrest.

Section 46-6-105, MCA.

This statute is a codification of the Montana and United States Constitutional protection of privacy in that, "absent exigent circumstances, a warrantless arrest for a minor (misdemeanor or nonviolent) crime cannot be made in the defendant's home without a warrant." State v. Beach, 217 Mont. 132, 147, 705 P.2d 94, 103 (1985); (citing Welsh v. Wisconsin, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); Payton v. NY, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).) See U.S. Const. Amend. IV; 1972 Mont. Const. Art. II, Sec. 10.

In order for § 46-6-105, MCA to apply to the facts of this case it must be shown that the defendant was arrested in his home or private dwelling at night for a misdemeanor committed at some other time and place. It is undisputed that the encounter between the defendant and the officer occurred at night and would not have occurred but for an alleged misdemeanor violation. The remaining

4

elements of arrest, home or dwelling place, and the commission of the misdemeanor at another time and place are in dispute.

The first question to be answered is whether the encounter that occurred between the defendant and the officer rose to the level of an arrest. Section 46-6-101(1), MCA, defines an arrest as the "taking [of] a person into custody in a manner authorized by law." Section 46-6-104(1), MCA, requires that an arrest be "made by an <u>actual restraint</u> of the person to be arrested." (Emphasis added.) In the previous case of State v. Thornton, 218 Mont. 317, 708 P.2d 273 (1985), this Court adopted three elements necessary to formulate an arrest.

> An arrest involves three elements: (1) authority to arrest; (2) assertion of that authority with intention to affect an arrest; and (3) restraint of the person arrested.

<u>Thornton</u>, 708 P.2d at 277.

In this case, the officer clearly had the authority to make an arrest. It appears that the officer went to defendant's home in order to make an arrest for the left-hand turn.

The actual restraint by a person is based upon an objective analysis of the surrounding circumstances.

> The standard for an arrest when there is not a physical restraint of the defendant is whether a reasonable person, innocent of any crime, would have <u>felt free</u> to walk away under the circumstances. (Emphasis added.)

<u>Thornton</u>, 708 P.2d at 277, 278.

It is reasonable under the circumstances of this case that the defendant would not have felt free to leave the officer's presence regardless of whether the physical contact between the

5

defendant and the officer rose to the level of physical contact. The officer testified that he made demands on the defendant and expected the defendant to obey these demands. These expectations by the officer give rise to the presumption that the officer acted in such a way as to make a reasonable person believe that he must obey. Defendant testified that he believed he must obey. The District Court found that the restraint rose to the level of an arrest.

The second question is whether the arrest occurred at the home or dwelling of the defendant. A person's privacy is protected from search and seizure intrusions without a warrant if it is reasonable to expect privacy under the surrounding circumstances. Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A person has such a reasonable expectation of privacy while in his home. The U.S. Supreme Court has concluded that these privacy protections begin at the "firm line" drawn at the entrance to the home. Payton v. N.Y., 445 U.S. at 590, 100 S.Ct. at 1382, 63 L.Ed.2d at 653. At the very least, under the Federal Constitution, if a person has substantially crossed this firm line, they have been deemed to have entered the home and it is reasonable to expect privacy.

In this case, the District Court found ample support in the record to reach the conclusion that the defendant was "straddling" the threshold to his home when he was confronted by the officer. Thus, defendant's body had broken the firm line defined at the home's entrance. There is substantial credible evidence to support

6

the District Court's decision that the defendant had entered his home or dwelling place.

The third and last element to be discussed regarding the application of § 46-6-105, MCA, to this case is whether the misdemeanor offense occurred "at some other time and place." Section 46-6-105, MCA. In this case, there is no question the misdemeanor offense of an allegedly illegal left-hand turn occurred other that at the defendant's home.

The District Court conclusion that the officer violated § 46-6-105, MCA, by arresting the defendant in his home at night without a warrant for a misdemeanor that was committed at some other time and place is supported by substantial credible evidence and applied correctly as a matter of law. Such violation resulted in an illegal arrest from which any resulting evidence must be suppressed as being "tainted." "Evidence . . . in order to be admissible, must be the product of a search, incident to a lawful arrest, since the officer had no search warrant." State v. Armstrong, 149 Mont. 470, 478, 428 P.2d 611, 615 (1967).

Because this arrest was illegal, all evidence against defendant seized as a result of such arrest is inadmissible.

The second issue to be addressed is whether this Court has juridiction over defendant's cross-appeal to dismiss the complaint for lack of speedy trial. "An appeal may be taken by the defendant only from a final judgment of conviction and orders after judgment . . . ." (Emphasis added.) Section 46-20-104, MCA, see Rule 1(d), M.R.App.P.

7

Section 46-1-201, MCA, defines judgment as "an adjudication by the court that the defendant is <u>guilty</u> or <u>not guilty</u> . . ." (Emphasis added.) In this case, there has been no determination by the District Court as to defendant's guilt or innocence of the offense charged. The appeal is premature.

The order of the District Court is affirmed and the cross-appeal is dismissed without prejudice.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices