No. 91-506

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

      Plaintiff and Respondent,

-vs-

GEORGE FRED ALLEN,

      Defendant and Appellant.

FILED

DEC 18 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Chris Christensen, Attorney at Law, Kalispell, Montana

      For Respondent:

          Hon. Marc Racicot, Attorney General, John Paulson, Assistant Attorney General, Helena, Montana
Ted O. Lympus, County Attorney, Kalispell, Montana

Submitted on Briefs:  August 6, 1992

Decided:  December 18, 1992

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Following a jury trial in the District Court for the Eleventh Judicial District, Flathead County, defendant was convicted of criminal possession of dangerous drugs with intent to sell, in violation of § 45-9-103(1), MCA. Defendant appeals. We affirm.

The parties state the issue as whether the District Court properly denied defendant's motion to suppress. We restate the issues as follows.

1. Were defendant's Fourth Amendment rights violated when law enforcement officers made a warrantless stop and search of his truck?

    A. Was there probable cause?

    B. Were there exigent circumstances?

2. Did defendant consent to the search of his truck?

3. Did the District Court err in denying defendant's motion to suppress?

On Saturday, April 7, 1990, Sergeant Fisher of the Kalispell Police Department (KPD) called Officer Christensen at home and informed him that a woman, April Allen, had come to the police station with some information on drugs. Officer Christensen interviewed Ms. Allen early that afternoon. She told him that her father-in-law, defendant George Allen, had gone to Tucson, Arizona, to pick up a load of marijuana and was bringing it back that evening in an old yellow Ford pickup truck. She also informed the officers that defendant hid the marijuana in spare tires and that he broke down the spare tires in the basement of his residence.

2

Officer Christensen testified that although he had not previously spoken with Ms. Allen, the information she gave was similar to information he had received in the past from other informants.

Officer Christensen helped organize a stakeout on Highway 2, west of Kalispell, to intercept defendant before he reached his home. Sergeant Fulton testified that Officer Christensen, Officer Sward and he were on the stakeout together from 5:00 p.m. Saturday afternoon. He further testified that at 1:30 a.m., he advised Officer Sward to go home and get some rest because he had been up for almost 24 hours. Shortly before 2 a.m. on April 8, 1990, Officer Christensen and Sergeant Fulton observed defendant's yellow Ford truck drive by the stakeout location. The officers stopped the truck. Defendant testified that Officer Christensen was standing in the opposite lane of Highway 2, holding a gun on him when he ordered him to show his identification and to step out of the truck.

Defendant was pat-searched when he exited the truck. He was then taken to the rear of the vehicle to stand in front of the police car's headlights. Sergeant Fulton was standing on the passenger side of the police car between the opened passenger door of the police car and the car itself with an AR-15 assault rifle pointed at defendant.

Officer Christensen advised defendant that he had been stopped because they had received information that he was transporting marijuana back from Arizona. Officer Christensen then advised defendant of his Miranda rights. Defendant asked Officer

3

Christensen if he was under arrest, to which Officer Christensen responded "not at this time". Defendant testified that he was asked to sign a search consent form and that he denied such consent to search. Officer Christensen testified that defendant verbally consented to the search but refused to sign the consent form.

The officers at the scene radioed Officer Sward and requested that he return to the scene. Officer Rick Jensen also arrived at the scene with his dog (the "drug dog") that was trained in the detection of marijuana. Officer Jensen opened the topper on the truck, picked up the dog, and placed him inside. Officers Jensen and Sward then conducted a search of the vehicle. The drug dog showed a strong interest in a spare tire located in the truck box and on the right front tire of an '86 Mazda being towed by defendant on a trailer. Following the dog's alert to the tire, Officer Christensen informed defendant that the truck, Mazda and trailer would be impounded.

The investigatory stop took approximately 85 minutes. Defendant was held at gun point for approximately 50 minutes. The truck was impounded but defendant was not arrested at that time. Officer Christensen gave defendant a ride home.

Once at his residence, defendant was asked for permission to search his home. Again, the State maintains that he gave verbal permission to search but declined to sign a consent form; and again, defendant maintains that he gave no consent to search. Nonetheless, a search was conducted, and the officers found a tool

4

used to break down tires in defendant's basement.  The officers seized the tool.

On Monday, April 9, 1990, Officer Christensen obtained a search warrant for defendant's truck.  Inside the spare tire the officer found four garbage bags containing a total of 15.8 pounds of marijuana.

Defendant was subsequently arrested and charged with criminal possession of dangerous drugs with intent to sell, in violation of § 45-9-103(1), MCA.

A suppression hearing was held on May 23 and May 24, 1991. Following the hearing, the District Court denied defendant's motion to suppress the evidence discovered as a result of the stop, search, and seizure of his vehicle.  Defendant appeals, challenging the propriety of the stop and warrantless search of his truck on April 8, 1990, as well as the warrant search of his spare tire on April 9, 1990.

I

Were defendant's Fourth Amendment rights violated when law enforcement officers made a warrantless stop and search of his truck?

With regard to the necessity of a warrant, Article II, Section 11 of the Montana Constitution in pertinent part provides:

> **Section 11.  Searches and seizures.**  The people shall be secure in their persons, papers, homes and effects from unreasonable searches and seizures.  No warrant to search any place . . . shall issue without describing the place to be searched . . . , or without probable cause, supported by oath or affirmation reduced to writing.

5

The requirements for searches and seizures are set forth in § 46-5-101, MCA, which provides:

> **Searches and seizures - when authorized.** A search of a person, object, or place may be made and evidence, contraband, and persons may be seized in accordance with Title 46 when a search is made:
> (1) by the authority of a search warrant; or
> (2) in accordance with recognized exceptions to the warrant requirement.

An exception to the warrant requirement is the "automobile exception," which "requires two things (1) the existence of probable cause to search; and (2) the presence of exigent circumstances, that is, that it was not practicable under the circumstances to obtain a warrant." State v. Cripps (1978), 177 Mont. 410, 422, 582 P.2d 312, 319, citing State v. Amor (1974), 164 Mont. 182, 520 P.2d 773; and Coolidge v. New Hampshire (1971), 403 U.S. 443.

## A. Was there probable cause?

Probable cause requires only a probability of criminal activity, not a prima facie showing. State v. Dess (1982), 201 Mont. 456, 655 P.2d 149. In its order denying the motion to suppress, the District Court first set forth the relevant facts from which it concluded that the officers had probable cause to stop and search defendant's truck. Those facts were known to the officers at the time they stopped the truck, and were eventually included in Officer Christensen's application for a search warrant.

The court stated that in October 1984, the Flathead County Sheriff's Office received a report from the Rocky Mountain Information Network that defendant had drug connections in New York

6

and New Jersey and that he was involved in drugs and prostitution. It further noted that in May of 1989, an anonymous informant reported to Officer Christensen that defendant was bringing kilos of marijuana back from Tucson, Arizona in spare tires and that defendant made deliveries in each state he passed through on his way back to Montana.

The court further noted that Don Bird, a convicted drug user, stated to Officer Christensen that defendant was his supplier and that defendant brought back large quantities of marijuana from Arizona. Officer Christensen considered Bird to be reliable because of his familiarity with the drug scene and because other names he provided were of other drug users known as such to the police. Although Don Bird testified at the suppression hearing that he did not remember defendant ever supplying him with drugs, Officer Christensen testified that he was present at a recorded interview with Bird in which Bird stated that defendant had sold him marijuana on one occasion and that defendant was bringing marijuana back from Tucson. The tape recording was played for the District Court.

The District Court found that another confidential informant had reported in early 1989 that defendant had supplied the informant with marijuana which defendant had brought back from Arizona.

Finally, the District Court found that on April 7, 1990, Officer Christensen met with Ms. Allen, who told him that defendant would be coming in from Arizona that evening with a large quantity

7

of marijuana in a spare tire in the back of a yellow Ford pickup belonging to defendant.

In conclusion, the District Court stated:

> Here, the police had specific information from various informants that Defendant Allen regularly transported large quantities of drugs from Tucson to Kalispell. A family member, who spent a great deal of time with the Defendant and would be in a unique position to know, contacted the police, gave them the description of Allen's pickup truck and the approximate time and place of his arrival into the Flathead. She also stated that Allen would be transporting marijuana in the spare tire of this vehicle. The police verified that Defendant owned a pickup matching the description given as well as his resident address. The police were present at the time and place as stated by the family member, and Defendant appeared, driving a vehicle matching the description given. At this point, the police had probable cause to believe that illegal activity was occurring and were therefore entitled to conduct the search which led to discovery of the spare tire containing the marijuana which is the subject of the suppression motion. The search being proper, the fruits of the search are admissible.

We agree with the District Court's conclusion that the evidence clearly established probable cause. We hold that the officers had probable cause to believe that defendant was transporting contraband, and had probable cause to stop defendant's vehicle.

## B. Were there exigent circumstances?

Defendant maintains that his Fourth Amendment right to be free from unreasonable search and seizure was violated when the police stopped him on Highway 2 without a warrant, held him at gun point, searched his truck and impounded it. He maintains that the police had ample time to obtain a search warrant the night of the stop, and the officer's failure to obtain a warrant under these

8

circumstances violated his Constitutional rights. He contends that since there were three officers on the stakeout until 1:30 a.m., one of them could have obtained a search warrant before sending Officer Sward home at 1:30 a.m. to "get some rest." He maintains that there were no exigent circumstances which would justify a warrantless stop and search since the officers had all the information they needed to obtain a warrant hours before the stop.

The State contends that a warrantless search was justified by exigent circumstances: (1) that there was not time to secure a warrant; and (2) that there were not enough officers available to safely conduct the stakeout. Relying in part on Officer Christensen's testimony, the State maintains that it would have taken four hours or more to obtain a search warrant since it was Saturday and thus more difficult to find a judge and the county attorney. Officer Christensen testified he thought it was more important to set up the stakeout as soon as possible. He further testified that there were not enough officers available at the time to get a warrant and organize a stakeout in time. He testified he was concerned about defendant's reputed dangerousness and believed that it was necessary to have more than one officer available at the stop.

In the recent case of California v. Acevedo (1991), 111 S.Ct. 1982, the United States Supreme Court considered various cases which had addressed warrantless searches of automobiles and luggage and other containers in automobiles. The court referred to Carroll

v. United States (1924), 267 U.S. 132, where the Supreme Court in pertinent part stated:

> It therefore held that a warrantless search of an automobile based upon probable cause to believe that the vehicle contained evidence of crime in the light of an exigency arising out of the likely disappearance of the vehicle did not contravene the Warrant Clause of the Fourth Amendment. (Citation omitted.)
>     The court refined the exigency requirements in Chambers v. Maroney . . . when it held that the existence of exigent circumstances was to be determined at the time the automobile is seized. (Citation omitted.)

Acevedo, 111 S.Ct. at 1986. The court discussed the various cases and concluded that it was appropriate to have one clear-cut rule to govern automobile searches and stated in pertinent part:

> We conclude that it is better to adopt one clear-cut rule to govern automobile searches and eliminate the warrant requirement for closed containers set forth in Sanders.
>
> VI
>
>     The interpretation of the Carroll doctrine set forth in Ross now applies to all searches of containers found in an automobile. In other words, the police may search without a warrant if their search is supported by probable cause. The court in Ross put it this way:
>
>> "The scope of a warrantless search of an automobile . . . is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found." (Citation omitted.)
>
> *   *   *
>
> The police may search an automobile and the containers within it where they have probable cause to believe contraband or evidence is contained.

Acevedo, 111 S.Ct. at 1991.

The Acevedo court defined exigent circumstances as those circumstances where it is not practicable to secure a warrant

10

because the vehicle in question can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. Acevedo, 111 S.Ct. 1982, citing Carroll v. United States (1925), 267 U.S. 132, 153.

In this case the police set up a stakeout and stopped defendant's vehicle on the highway a few miles from his home. The defendant's daughter-in-law had indicated to the police that the defendant would arrive some time during the evening but the police did not know exactly the time when the defendant would arrive. The stakeout started at 5 p.m. on Saturday and continued until just before 2 a.m. the following morning. Three officers manned the stakeout until 1:30 a.m. when one officer was allowed to go home and get rest because he had been up for almost 24 hours. The contention of the defendant is that since there were three officers on the stakeout until 1:30 a.m., one of the officers could have obtained a search warrant. He therefore contends there were no exigent circumstances which would justify the warrantless search.

The contentions of the defendant disregard salient facts presented by the prosecution. Officer Christensen testified that defendant was extremely dangerous. His testimony included the following:

Q.   And why would you have had your gun drawn?

A.   I have talked to a number of people about Mr. Allen and they indicated that he was--had mob connections in New York and that he was involved with Mexican Mafia in Arizona. And everybody I talked to believed that Mr. Allen was a dangerous person and everyone I talked to refused to have their name used because they felt that he was extremely dangerous. And I took them at their word.

11

Q. You mean people who had provided you with information?

A. People who had provided me with information.

Q. Expressed a fear of him?

A. Yes, a great fear.

The stakeout took place on Saturday evening and night. Officer Christensen testified that obtaining a search warrant on Saturday evening or Saturday night would have taken approximately four hours. We conclude there were exigent circumstances which made it impracticable to secure a search warrant.

We hold that defendant's Fourth Amendment rights and Montana constitutional rights were not violated when law enforcement officers made a warrantless stop and search of his truck.

II

Did defendant consent to the search of his truck?

Because we held that there was probable cause to search defendant's truck, the issue of consent is irrelevant and we need not discuss it. State v. Evjen (1988), 234 Mont. 516, 765 P.2d 708.

III

Did the District Court err in denying defendant's motion to suppress?

Based on our holding on the first issue, we conclude that the District Court correctly denied defendant's motion to suppress.

IV

We note that defendant has raised several other issues on appeal. However, we find it unnecessary to review any of these

12

issues due to their lack of merit or the fact that some of them were raised for the first time on appeal and therefore, not properly before this Court.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

13

Justice Karla M. Gray, dissenting.

I respectfully dissent from the opinion of the majority. The facts of this case do not meet the "exigent circumstances" test for the so-called automobile exception to the search warrant requirement. I would reverse the District Court's denial of appellant's motion to suppress.

The majority correctly notes our definition of "exigent circumstances," namely, that it was not practicable to obtain a warrant under the circumstances. State v. Cripps (1978), 177 Mont. 410, 422, 582 P.2d 312, 319. "Practicable" is defined by both Webster's Third International Dictionary and Black's Law Dictionary (Rev. 4th Ed.) as possible to perform or capable of being done or accomplished. The term certainly does not mean, and has never been construed to mean, merely convenient. The majority's conclusion that the facts of this case meet the exigent circumstances test renders that test null and void insofar as it has heretofore protected the Fourth Amendment rights of Montanans. The constitutional requirement for search warrants has given way to a "convenience" analysis. I cannot agree.

The relevant and undisputed facts relied on by the majority are as follows. Early in the afternoon of April 7, 1989, officers received a tip from appellant's daughter. The tip was consistent with earlier information received by law enforcement, but never acted upon, that appellant was involved with drugs. A procedure was in place for obtaining warrants on weekends. It would have taken approximately four hours to obtain a search warrant, given

14

the fact that April 7 was a Saturday. The officers did not attempt to obtain a warrant. Instead, by 5:00 p.m., three officers had established a stakeout. Because appellant was considered dangerous, law enforcement believed it necessary to have "more than one" officer present at the stakeout. The officer in charge believed that it was more important to set up the stakeout than to obtain a warrant. The three officers remained at the stakeout from 5:00 p.m. until 1:30 a.m., at which point one of the officers was allowed to leave. Appellant drove past the stakeout location at approximately 2:00 a.m., and was stopped; his automobile subsequently was searched at the scene.

The majority relies on specific facts and arguments to support its conclusion that these facts meet the exigent circumstances test: that there was not time to obtain a warrant; that more than one officer was needed at the stakeout; and that the officer believed it was "more important" to set up the stakeout than to obtain a warrant. The majority's reliance is flawed.

First, it is simply not the case, and the record does not support the assertion, that there was insufficient time to obtain the warrant. Rather, the record makes it clear that a procedure was in place for obtaining warrants on weekends and that it would have taken approximately four hours to do so. In other words, given that four hours elapsed from the time the tip was received until the stakeout was in place, the search warrant could have been obtained by the time the stakeout was established. Second, the officer's belief that more than one officer was needed at the

15

stakeout location adds nothing to the exigency of the circumstances here. In fact, by 5:00 p.m., three officers were at the stakeout and remained there in excess of eight hours, at which time one was allowed to leave. No testimony supports the need for three officers at the stakeout; nor does anything in the record or in the majority's analysis support the notion that all three officers were needed for the entire time between receipt of the tip and 5:00 p.m. to the extent that no one was available to obtain a warrant. Finally, the majority's reliance on the officer's belief that it was "more important" to set up the stakeout than to obtain a warrant, as somehow helping to create exigent circumstances here, is chilling indeed. I do not question the officer's belief; I do submit that the relative priorities placed on such matters by law enforcement officers is based on considerations unrelated to this Court's obligation to uphold the public's constitutional right to be free from unreasonable searches.

The facts of this case are clear that there was sufficient time and sufficient staff available to obtain a warrant. Under these facts, the "exigent circumstances" test was not met and appellant's Fourth Amendment rights were violated.

_____
Justice

16

Justice William E. Hunt, Sr., dissenting.

I dissent. The facts of this case do not justify a warrantless search. The officers had ample time and resources to obtain a search warrant from either the two District Court Judges located in the county, or from the Justice of the Peace. The fact that the officer who remained did not request additional assistance after letting one of the officers go home, demonstrates that the officers were not in great fear for their safety. The Constitution should not be suspended merely because it might take some extra effort on the part of the authorities to obtain a warrant. The Constitution applies seven days a week, twenty-four hours a day, holidays included.

I would reverse the District Court and suppress the evidence obtained by the illegal search.

_____
Justice

17

December 18, 1992

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


CHRIS CHRISTENSEN
Attorney at Law
P.O. Box 1954
Kalispell, MT 59903-1954

George Fred Allen
700 Conley Lake Rd.
Deer Lodge, MT 59722


HON. MARC RACICOT, Attorney General
John Paulson, Assistant
Justice Building
Helena, MT 59620

Ted O. Lympus, County Attorney
Flathead County
P.O. Box 1516
Kalispell, MT 59903-1516


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy