No.   92-189

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

      Plaintiff and Respondent,

   -v-

DANIEL RICHARD McCARTHY,

      Defendant and Appellant.


APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas Honzel, Judge presiding.


COUNSEL OF RECORD:

      For Appellant:

      Randi M. Hood, Public Defender, Helena, Montana

      For Respondent:

         Patricia J. Jordan, Assistant Attorney General,
Helena, Montana; Marc Racicot, Attorney General,
Helena, Montana; Mike McGrath, Lewis and Clark
County Attorney, Helena, Montana; Lisa Leckie,
Deputy County Attorney, Helena, Montana


FILED

Filed: APR 1 6 1993

CLERK OF SUPREME COURT
STATE OF MONTANA
*Ed Smith*

Submitted on Briefs:  October 22, 1992

Decided:  April 16, 1993

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

This is an appeal from an order of the First Judicial District Court, Lewis and Clark County, denying appellant's motion to suppress evidence seized in a warrantless search. We affirm.

The issues on appeal are:

1. Did the District Court err in denying McCarthy's motion to suppress evidence due to an illegal warrantless search of a vehicle and a jacket in that vehicle?

2. Did the District Court err by refusing to suppress evidence found upon McCarthy's person at the time of his booking because such evidence was fruit of the poisonous tree?

Daniel R. McCarthy (McCarthy), Shannon Hiatt (Hiatt), and Leslie Eddards (Eddards), were involved in a one-vehicle accident on July 5, 1991 on the Stemple Pass road in Lewis and Clark County. McCarthy and Hiatt were passengers in the car driven by Eddards. Montana Highway Patrol Officer Scott Swingley arrived at the scene and found the automobile in a ditch with its engine running and Hiatt severely injured.

Swingley suspected that the driver, Eddards, was intoxicated and administered a breathalizer test. The test results showed .175 blood alcohol content. Swingley arrested Eddards on a DUI charge, handcuffed him and placed him in the rear seat of the police car.

Swingley then read McCarthy his rights and asked McCarthy if there was anything illegal in the car, upon which McCarthy said "You know about the pot pipe?" Both McCarthy and Swingley then approached the car at which point McCarthy began searching from the

passenger side for the pipe which he stated was located around the car's gearshift. He could not find it.

Swingley went to the driver's side and saw a crumpled jacket in the back seat with a clear plastic baggie protruding from the pocket. He reached into the jacket, pulled out the baggie and determined the green leafy substance might be marijuana. He replaced the baggie in the pocket and asked McCarthy who the jacket belonged to. McCarthy said it was his, upon which Swingley pulled the baggie from the pocket.

Swingley arrested McCarthy and transported him to the county jail in Helena where jail personnel discovered a small baggie in McCarthy's right front pant's pocket. The baggie contained LSD. McCarthy was charged with felony possession of dangerous drugs.

On August 22, 1991, McCarthy pled not guilty, and on September 10, 1991, filed a motion to suppress evidence. A hearing was held on October 24, 1991. The District Court denied McCarthy's motion to suppress on December 10, 1991. McCarthy entered an Alford plea of guilty on February 6, 1992, and received a two year deferred sentence on the felony count. McCarthy reserved his right to appeal the denial of his motion to suppress at the time he pled guilty. This appeal followed.

I

Did the District Court err in denying McCarthy's motion to suppress evidence due to an illegal warrantless search of a vehicle and a jacket in that vehicle?

McCarthy argues that as a passenger in Eddards' car he had a reasonable expectation of privacy in both the car and his jacket. McCarthy contends that he is protected against unreasonable searches by the Fourth Amendment of the United States Constitution and Article II, Section 11 of the Montana Constitution. McCarthy contends that warrantless searches are per se unreasonable and that the exception to the rule requires probable cause which did not exist here.

The State argues that Officer Swingley had probable cause to search McCarthy's jacket and such search was valid under the "automobile exception" to the Fourth Amendment's warrant requirement. The State further argues that it was permitted to search both the automobile and McCarthy's jacket as a search incident to Eddards' arrest for DUI.

An exception to the warrant requirement is the "automobile exception," which requires the existence of probable cause to search and the presence of exigent circumstances, that is, that it was not practicable under the circumstances to obtain a warrant. State v. Allen (1992), 844 P.2d 105, 49 St.Rep. 1130, 1131. We first address McCarthy's claim concerning the automobile itself.

McCarthy "bears the burden of proving not only that the search . . . . was illegal, but also that he had a legitimate expectation of privacy" in the automobile. Rawlings v. Kentucky (1980), 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633, 641. A person is protected from search and seizure only if it is reasonable to expect privacy under the surrounding circumstances.

4

City of Billings v. Whalen (1990), 242 Mont. 293, 790 P.2d 471. McCarthy offered no reasons nor foundation for his claim of privacy in the auto. The car was on a public highway, was involved in a DUI and belonged to the father of the driver. Under these circumstances, we conclude that it was not reasonable for McCarthy to have any expectation of privacy in the auto itself, nor has he offered proof of any.

However, under certain circumstances, McCarthy could have had a different expectation of privacy in his jacket which was found in the car. Since McCarthy has claimed ownership of the article seized, the jacket, we review the circumstances of this case to see if police had authority to make a warrantless search of McCarthy's jacket. See, W. Ringel, Searches & Seizures, Arrests & Confessions, §11.7, pp. 1156-57, (1992).

In its conclusions of law, the District Court determined that, under the automobile exception, Officer Swingley had probable cause to search the car including McCarthy's jacket after being told that there was a pot pipe in the car. Because the District Court determined that Officer Swingley had probable cause, it denied McCarthy's motion to suppress the evidence. We review conclusions of law by the District Court as to whether the court's interpretation of law was correct. Steer Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

Warrantless searches are per se unreasonable under the Fourth Amendment of the United States Constitution. Katz v. United States (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576. Both federal

and state law acknowledge certain specific exceptions to the need for a warrant. California v. Acevedo (1991), ___ U.S. ___, 111 S.Ct. 1982, 114 L.Ed.2d 619; State v. Evjen (1988), 234 Mont. 516, 765 P.2d 708. One of those exceptions is known as the automobile exception. Carroll v. United States (1925), 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543. The automobile exception has been adopted by this Court in State v. Speilmann (1973), 163 Mont. 199, 516 P.2d 617.

The history of the automobile exception to the prohibition against warrantless searches has been long and varied. The exception was initially recognized as an attempt to enable authorities to stop the transport of illegal liquor during the Prohibition Era. E. Wedlock, Car 54--How Dare You!: Toward a Unified Theory of Warrantless Automobile Searches, 75 Marquette Law Review 79 (1991). Since that time the exception has been broadened but remains clearly delineated by specific parameters, particularly in Montana.

In the 1988 case of Evjen this Court concluded that an automobile may be searched by police without a warrant where there is probable cause to believe the automobile's contents offend against the law. Evjen, 234 Mont. at 520, 765 P.2d at 710. In that case the Court pointed out that the resolution of the case did not depend upon whether the officers had made an actual arrest, but upon whether the officers had probable cause to search the motor vehicle without a warrant pursuant to the "probable cause exception." Evjen, 234 Mont. at 519, 765 P.2d at 711. In Evjen

6

the Court determined that the officer had specific information from a reliable informant that she had been in the pickup, saw drugs in the pickup and described three persons who had arrived in the truck. The information given by the informant was confirmed when three persons did approach the truck. The Evjen Court concluded there was probable cause to search the truck, stating:

> There is no question that Officer Phillips had probable cause to search the truck at that time. The alternatives were to hold the truck until a magistrate or judge could issue a search warrant, or allow the three persons to get into their truck and drive away with the contraband evidence. Because the officer had probable cause to search the vehicle, the search was not unreasonable under the Fourth Amendment, even though an actual arrest of the defendant had not been made.

Evjen, 234 Mont. at 520, 765 P.2d at 711.

In the 1992 case of Allen, we quoted from the U.S. Supreme Court case of California v. Acevedo (1991), ___ U.S. ___, 111 S.Ct. 1982, 114 L.Ed.2d 619. In Allen, we agreed with the Acevedo analysis of closed containers found during an automobile search:

> We conclude that it is better to adopt one clear-cut rule to govern automobile searches and eliminate the warrant requirement for closed containers set forth in Sanders.

Allen, 844 P.2d at 110; citing Acevedo, 111 S.Ct. at 1986. We concluded in Allen, as we do here, that the police may search without a warrant if their search is supported by probable cause. Allen, 844 P.2d at 110. That search includes any closed containers found in the automobile.

Here Officer Swingley had come to the scene of an automobile accident in which a passenger had been seriously injured. He arrested the driver of the vehicle on a charge of DUI. Officer

7

Swingley was then informed by defendant that there was a pot pipe in the car and defendant helped Officer Swingley look for the pot pipe. In the course of that search, the officer observed a plainly visible baggie protruding from the jacket. Because the pot pipe was not found in the gear shift area in the car, it was reasonable to assume that it could be in the jacket; and in addition, the baggie suggested the possibility of the presence of marijuana. Applying the standards of Evjen and Allen, we conclude Officer Swingley had probable cause to search the vehicle without a warrant; therefore, Officer Swingley could search McCarthy's jacket as well as any other container located within the vehicle.

McCarthy relies on a Supreme Court case to argue that the police could not search his jacket without a warrant. Contrary to McCarthy's arguments, the U.S. Supreme Court has expressly overruled Robbins v. California (1981), 453 U.S. 420, 101, S.Ct. 2841, 69 L.Ed.2d 744, upon which he relies so heavily. See United States v. Ross (1982), 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572. The Robbins reasoning states that a container in a vehicle must clearly announce its contents. Robbins, 453 U.S. at 427-28.

The second consideration concerning a warrantless search is exigent circumstances which are those circumstances where it is not practicable to secure a warrant. Allen, 844 P.2d at 109. When the automobile exception was first created, exigent circumstances meant that the vehicle was movable, as in Allen, thus endangering preservation of the fruits of a crime. Today, certain authorities suggest a "totality of the circumstances" approach to the

8

appropriateness of a warrantless search. J. Hall, Search and Seizure, § 14:3 (1992). We therefore conclude that exigent circumstances should be considered on the "totality of circumstances." We have stated that although still jealously limited in Montana, exigent circumstances are not absolutely limited. State v. Dess (1982), 201 Mont. 456, 655 P.2d 149. Police may need to consider not just the mobility of the vehicle, but the possible destruction of evidence, the safety of police officers, emergency situations, and the possible gravity of the crime committed. J. Hall, Search and Seizure, § 14:3 et seq. Also, see Allen.

In Allen, we found exigent circumstances to be the need to ensure the safety of police at the roadblock due to Allen's dangerous reputation, the mobility of the vehicle, and the possible insufficient time to obtain a warrant.

Here, Officer Swingley had one intoxicated person in custody, another one had indicated a pot pipe was somewhere in the car and a third person had been seriously injured and life-flighted from the scene. Unlike in Allen, the car here was not moveable. But the alleged pot pipe certainly was; and not being in custody, McCarthy could easily have removed it as well as any other evidence associated with the pot pipe or the accident in general. We take judicial notice that it is approximately one hour from the scene of the accident to Helena. Therefore, both the jail and appropriate authority for obtaining a warrant were an hour away. Had Officer Swingley taken the intoxicated driver to jail and then gone to get

a warrant, McCarthy would have been left at the scene; the evidence which Swingley suspected may be present could have been removed or destroyed by McCarthy unless the car had already been towed. We conclude it was impracticable for Swingley to stay at the scene until the car was towed. Therefore, the possibility existed that McCarthy, or the real owner of the automobile, could have removed evidence easily after officers left the scene. Further, the car was on a public road, anyone could have removed evidence from the car had officers left before it was towed.

We conclude that possible destruction of evidence and the emergency nature of the situation constitute exigent circumstances under the facts of this case.

Because the District Court correctly determined that the search performed by authorities in this case was appropriate under the automobile exception, we do not find it necessary to consider the appropriateness of a search incident to an arrest under the facts of this case as the State argues.

We finally conclude that taking all the facts of this case into consideration, both probable cause and exigent circumstances existed for a warrantless search under the automobile exception. We hold that the District Court did not err in denying defendant's motion to suppress the evidence on the basis of an illegal warrantless search.

II

Did the District Court err by refusing to suppress evidence found upon McCarthy's person at the time of his booking because such evidence was fruit of the poisonous tree?

10

McCarthy argues that because the marijuana found in his jacket was illegally seized, his arrest was illegal and anything removed from his person during booking is fruit of the poisonous tree. City of Billings v. Whalen (1990), 242 Mont. 293, 790 P.2d 471. Because we have determined that the search of the automobile and the jacket were appropriate under the automobile exception to prohibition against warrantless searches, there is no basis to apply the doctrine of the fruit of the poisonous tree. We hold that the District Court did not err in refusing to suppress such evidence.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

11

Justice Karla M. Gray dissenting.

I respectfully dissent from the majority opinion.

In my dissent in State v. Allen (Mont. 1992), 844 P.2d 105, 49 St.Rep. 1130, I expressed my concerns regarding this Court's new interpretation of the "exigent circumstances" test; in addition, I questioned the Court's record-based assertions. I reiterate those concerns and questions here. The majority's purported reliance on the cardinal constitutional principle that warrantless searches are per se unreasonable rings hollow indeed in light of its continued broadening of the automobile exception. I cannot agree.

With regard to the majority's analysis of the probable cause prong of the automobile exception to the warrant requirement, I disagree totally with the majority that it was "reasonable to assume" that the pipe was in the jacket because the pipe was not found where McCarthy thought he had seen it. This "reasonable assumption" is the creation of the majority and not of the officer at the scene. Indeed, Officer Swingley did not testify or even suggest that he removed the baggie from McCarthy's jacket as part of a search for the pipe; he merely saw the baggie, assumed based on his training that it might contain marijuana, and removed it from the jacket.

I also disagree with the majority's analysis of the "exigent circumstances" prong. Its construct that McCarthy could have removed or destroyed the evidence is belied by the record. Officer Swingley testified that McCarthy had access to the vehicle before

12

the arrival of law enforcement personnel and, of course, during the time that he made a limited search for the pot pipe in Swingley's presence. Officer Swingley also testified that, after the arrival of law enforcement personnel, he was allowing access to the vehicle only by them or emergency medical personnel. In addition, the majority's conclusion that it was impracticable for Officer Swingley to remain at the scene is irrelevant, since the record reflects that a Lewis and Clark County deputy sheriff also was at the scene. In this regard, the majority's statements that either McCarthy, the owner of the vehicle or "anyone" could have removed evidence from the car had officers left before it was towed constitute a speculative spinning out of potential problems which simply are not supported by the record before us, particularly given the presence of Deputy Sheriff Weisner. Under these facts, I do not believe the "exigent circumstances" test is met; therefore, it is my view that McCarthy's constitutional right to be free from unreasonable searches and seizures was violated.

My most fundamental concern with the majority opinion, however, is this Court's apparent intention to continue to broaden the automobile exception to the warrant requirement to cover any possible set of facts. It accomplishes this objective by (1) accepting and adopting the United States Supreme Court's pronouncements of federal constitutional law in the context of a challenge brought under both the United States and Montana Constitutions; and (2) adopting the "suggestion" of "certain authorities"--here, a treatise by J. Hall--for the concept that it

13

is appropriate under the Montana Constitution to overlay a "totality of circumstances" standard onto the "exigent circumstances" test. Such an approach is a far and, in my view, unwarranted cry from the constitutional standard enunciated by this Court in State v. Sawyer (1977), 174 Mont. 512, 571 P.2d 1131.

In considering challenges under the Montana Constitution to an inventory search of a vehicle in Sawyer, this Court stated that "[i]t is axiomatic that a search must comport with state and federal constitutional law." Sawyer, 571 P.2d at 1133 (emphasis added). We went on to conclude that it was not necessary to consider the Fourth Amendment to the United States Constitution, "because we view the Montana Constitution to afford an individual greater protection in this instance than is found under the Fourth Amendment . . . ." Sawyer, 571 P.2d at 1133. We continued by quoting both the individual right to privacy section and the search and seizure section of the Montana Constitution, stating that the inventory search at issue was a "significant invasion of individual privacy." Sawyer, 571 P.2d at 1133. Interestingly, we noted that while an automobile and a home may differ for constitutional purposes, "'[t]he word "automobile" is not a talisman in whose presence the Fourth Amendment fades away and disappears.'" Sawyer, 571 P.2d at 1133 (citations omitted). On the basis of the significant invasion of individual privacy inherent in the inventory search, we held the State to the "reasonableness" and "compelling state interest" standards of the Montana Constitution and affirmed the district court's suppression of the evidence.

14

In the case now before us, the word "automobile" magically has become the talisman before which constitutional prohibitions against unreasonable searches fade away and disappear. While the majority is willing to walk away from this State's constitution and its significant protections, I am not. In addition to my conclusion that the facts of this case constitute a violation of the constitutional guarantee against unreasonable searches on a stand-alone basis, I would apply the Montana Constitution's combined privacy right and prohibition against unreasonable searches to McCarthy's jacket under the facts of this case. To me, it is neither logical nor supportable that McCarthy's privacy interest in his jacket, and the protection to which he and the jacket would have been entitled had he been wearing it, must give way to an automobile "exception" now so broad as to swallow the warrant requirement altogether, given Sections 10 and 11 of Article II of the 1972 Montana Constitution.

Like the majority, I am mindful of the pitfalls faced by law enforcement officers on the front line in attempting to meet constitutional requirements in this difficult area of searches. Those efforts are undertaken in good faith in the face of practical and often dangerous constraints. In addition, I understand the appeal of "bending" the constitution--particularly in these "law and order" days--when those involved are or may be offenders against the law. My view, however, apparently not shared by the majority, is that to undermine specific constitutional protections in one instance is to weaken and make vulnerable the full panoply

of constitutional protections to which each of us is entitled in our daily lives.

_____
Justice

Justices Terry N. Trieweiler and William E. Hunt, Sr., join in the foregoing dissent of Justice Karla M. Gray.

_____
_____
Justices

16